**AFFIRM; and Opinion Filed August 12, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01349-CR**

**EX PARTE ALFREDO OLVERA**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. W-199-81492-09**

## MEMORANDUM OPINION ON REMAND

Before Justices Francis, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

We issue this opinion on remand from the Texas Court of Criminal Appeals in *Ex parte Olvera*, No. PD-1215-12, 2013 WL 1149926 (Tex. Crim. App. Mar. 20, 2013) (per curiam) (not designated for publication). We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

In October 2009, Alfredo Olvera pleaded guilty to the offense of assault of a public servant. Pursuant to a plea agreement, the trial court deferred adjudicating appellant's guilt, placed him on community supervision for five years, and assessed a $500 fine. In December 2010, appellant traveled to Mexico after getting written permission from his supervision officer. When he tried to return, he was denied reentry by U.S. Customs and Border Protection because he was "identified as an alien who is subject to Removal (Deportation) Proceedings for his/her prior criminal conviction."

Appellant filed an application for a writ of habeas corpus alleging that his guilty plea was involuntary because, among other reasons, his lawyer was ineffective. After an evidentiary hearing, the trial court denied relief. Appellant appealed the denial of habeas relief and also sought permission to file an out-of-time direct appeal of his guilty plea. Without reaching all of appellant's issues on appeal, we reversed the trial court's order denying habeas relief because we concluded that counsel rendered ineffective assistance under *Padilla v. Kentucky*, 559 U.S. 356 (2010), when he did not advise appellant that he would be deported if he pleaded guilty. *Ex parte Olvera*, 394 S.W.3d 572, 574 (Tex. App.—Dallas 2012), *rev'd*, No. PD-1215-12, 2013 WL 1149926 (Tex. Crim. App. Mar. 20, 2013) (per curiam) (not designated for publication).

The State filed a petition for discretionary review arguing that we incorrectly applied *Padilla*. While the State's petition was pending, the United States Supreme Court decided *Chaidez v. United States*, __ U.S. __, 133 S.Ct. 1103, 1107, 1113 (2013), in which it held that *Padilla* did not apply retroactively. The Texas Court of Criminal Appeals adopted the reasoning in *Chaidez* as a matter of state law in *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013). The court vacated our judgment in this case and remanded to us in light of its decision in *Ex parte De Los Reyes*. *Ex parte Olvera*, 2013 WL 1149926, at *1. On remand, the parties waived further briefing. Having now considered all of appellant's issues in the appeal from the order denying habeas relief, we affirm the trial court's order.

## STANDARD OF REVIEW

When we review a trial court's ruling on an application for a writ of habeas corpus, we examine the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling absent an abuse of discretion. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We afford almost total deference to the court's determination of the

historical facts that are supported by the record, especially when those facts are based on an evaluation of credibility and demeanor. *Id.* If a trial court does not make explicit findings, as here, we grant deference to implicit findings that support the court's ruling. *Id.* at 819. We will reverse the trial court's ruling only if we conclude that it is arbitrary, unreasonable, and made without reference to guiding rules or principles. *See id.*

## APPLICABLE LAW

A guilty plea waives the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). For a guilty plea to be consistent with due process, it must be entered knowingly, intelligently, and voluntarily. *Id.* In other words, the "guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Id.* Generally, a guilty plea is voluntary if the defendant was made fully aware of the direct consequences of the plea. *Ducker v. State*, 45 S.W.3d 791, 795 (Tex. App.—Dallas 2001, no pet.). Once this prima facie showing of voluntariness is made, the burden shifts to the defendant to show that he entered the plea without knowing its consequences and was harmed as a result. *McGill v. State*, 200 S.W.3d 325, 333 (Tex. App.—Dallas 2006, no pet.). "A defendant's sworn representation that his guilty plea is voluntary 'constitute[s] a formidable barrier in any subsequent collateral proceedings.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). We determine the voluntariness of a guilty plea from the totality of the circumstances viewed in light of the entire record. *Ducker*, 45 S.W.3d at 796.

## BACKGROUND

### Underlying Offense—Assault of Public Servant

The following facts are taken from the record as viewed in the light most favorable to the trial court's ruling. One evening in May 2009, appellant and some friends and cousins were at a

dance hall in Princeton, Texas, along with two or three hundred other people. Appellant's friend, Gustavo, was talking to a girl. A man walked up to Gustavo and began arguing with Gustavo. Appellant intervened, and he and the man began pushing and shoving each other. Princeton police officer Doyle Flatt, who was serving as security at the dance hall, saw appellant and the other man arguing and went over to break it up. Flatt escorted the unidentified man, who Flatt said was the more aggressive of the two, and a civilian security guard escorted appellant toward the exit.

The man Flatt was escorting had calmed down when Flatt noticed that appellant was pushing and shoving the security guard and others who were trying to assist the guard. Flatt left the man he was escorting and approached appellant. He saw appellant shove the disc jockey and others. Flatt "placed both of [appellant's] arms behind his back and began to turn him away from the crowd." Appellant resisted and tried to pull his arms away. As Flatt turned, he tripped over someone's foot and let go of appellant. Flatt fell and appellant fell on top of him. Flatt did not know if appellant intentionally fell on him. Appellant drew his arm back as if to strike Flatt. Flatt grabbed the back of appellant's neck and pulled him down, and appellant began to push or strike Flatt in the sides. Flatt struck appellant on the left side of his face and head with a closed fist several times to distract him long enough for Flatt to get up. He also called dispatch for backup.

Eventually appellant began to get up, and Flatt also began to stand up. As Flatt was checking to be sure his duty belt was intact, appellant struck Flatt on both sides of his head with a closed fist. Flatt lifted his head and appellant struck him in the face. Flatt struck appellant in the neck and began to take him down when another security guard grabbed appellant by the neck and pulled him to the floor. Appellant struggled for several seconds, but Flatt was able to secure him. Flatt placed appellant in custody. Appellant told Flatt that "he did not know [Flatt] was an officer

–4–

but [Flatt] hit him first." After appellant was secured in the police car, Flatt went back inside to find the other individuals involved. He could not find them and was unable to get a good description of anyone else involved.

The evidence showed that on the night of the incident Flatt was wearing a black polo-type shirt, black tactical pants, and black boots. The shirt had "D. Flatt" and "Police" on the front right side and a police badge on the front left side, all sewn onto the shirt in a silver reflective material. The back of the shirt contained the word "POLICE" in about three- to four-inch reflective letters. Flatt also wore a bullet-proof vest and a duty belt with handcuffs, a gun, two spare magazines, a baton, a can of mace, and a radio.

### Plea Proceeding

The State charged appellant with assault of a public servant. Appellant hired Jose Stewart to represent him. Their meetings were conducted entirely in Spanish. The State initially offered appellant four years' community supervision in exchange for a guilty plea. Stewart recommended that appellant reject the offer, and he did. The State then offered five years' deferred adjudication in exchange for a guilty plea. Stewart recommended that appellant accept that offer, and he did.

At the plea hearing, Stewart translated the proceedings for appellant. Appellant waived his right to a jury trial and to confront his accusers. He said he had a full and complete opportunity to discuss the case with his lawyer and he was fully satisfied with the lawyer's representation. He said he understood the charges and wanted to plead guilty. He said he was not promised anything to plead guilty, no one forced him to plead guilty, and he was pleading guilty freely and voluntarily. He stated he was not a citizen of the United States and that he understood that by entering a guilty plea he could be deported, lose his ability to become a naturalized citizen, and denied reentry into the country. Appellant testified that he understood the plea

agreement and that he was giving up his right to appeal unless the court gave him permission to appeal.

The court gave appellant a copy of the "Trial Court's Certification" regarding appellant's right to appeal; it stated appellant "has NO right of appeal" because the case is a plea-bargain case and that appellant "has waived the right of appeal." The court accepted the plea and found that it was made freely and voluntarily.

The State offered into evidence appellant's signed judicial confession, the plea agreement, and the "Trial Court's Certification." Appellant did not object. Appellant waived his right to remain silent, and the State called appellant as a witness. The State asked appellant if he "committed the acts exactly as alleged in the indictment in the case" and appellant said "yes."

## DISCUSSION

Appellant raises five issues on appeal. In issues one, two, and four, he argues his plea was involuntary as a result of ineffective assistance of counsel. In issue three, he argues the judgment and sentence are invalid and his plea was involuntary as a result of the trial court's failure to swear Stewart as the interpreter during the plea proceedings. And in issue five, he argues his plea was involuntary because of all the errors raised in the prior four issues.

### Ineffective Assistance of Counsel

To prove a guilty plea was involuntary because of counsel's ineffective assistance, an appellant must show by a preponderance of the evidence that (1) counsel's plea advice did not fall within the wide range of competence demanded of attorneys in criminal cases, and (2) there is a reasonable probability that, but for counsel's deficient performance, appellant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010); *Ex parte Amezquita*, 223 S.W.3d 363, 366 (Tex. Crim. App. 2006). We indulge a strong presumption that counsel's

–6–

conduct fell within the wide range of reasonable professional assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). And when the trial court's implied findings are supported by the record, we should accept them. *See Ex parte Amezquita*, 223 S.W.3d at 367.

***Failure to Investigate and Advise about Defenses***

In issue one, appellant contends that he had "a great chance of acquittal" because he was acting in self-defense and he did not know Flatt was an officer. He argues that Stewart did not investigate the case, interview eyewitnesses, or properly advise appellant about the elements of the offense before he pleaded guilty. He argues that if he had been advised properly, he would not have pleaded guilty.

To support his claim, appellant testified at the habeas hearing that he told Stewart "everything, how it all happened." He said he told Stewart about his friend trying to talk with the girl and a fight breaking out, about his interaction with the officer, how he did not know Flatt was an officer until Flatt was taking him out in handcuffs, that his girlfriend had witnessed everything, and that two of his cousins and two friends were also at the dance hall. Appellant said Stewart did not explain anything about the law or the facts, and they never talked about what happened after the first meeting. He said Stewart never talked to him about the police report, and appellant never saw a copy of the police report.

Appellant agreed that he signed the plea papers which contained the waiver of his rights, but he said Stewart did not explain the documents to him. When asked how he ended up signing the documents, appellant said Stewart "would tell me, but he wouldn't tell me everything that the document said." Appellant was asked what Stewart told him about the documents, and appellant said, "Honestly, I don't remember."

The State pointed out to appellant on cross-examination that he had started to answer some of the questions posed by his lawyer before the translator started speaking, and appellant

said he speaks English "[a]bout 50 percent [sic]." He said when he apologized to Flatt at the dance hall because he did not know Flatt was an officer, he spoke to Flatt in English.

Berta, appellant's sister, testified that she was with appellant each time he met with Stewart. She confirmed appellant's testimony about those meetings.

Pursuant to the trial court's order, Stewart filed an affidavit in response to appellant's application for a writ of habeas corpus. In the affidavit, Stewart stated that appellant was unable to give him any details about the dance hall incident, appellant said he had been drinking and was unaware of what caused the "brawl," he was not aware a police officer was on the premises, and "he was simply a victim defending himself against violent assaults." Stewart said he asked appellant if "he knew anyone who could shed some light on the incident" and appellant said "he did not want to get anyone directly involved since it could cause additional immigration difficulties to the people he knew." Stewart testified that he explained how important it was to have an alternative theory of the case through other witnesses, and appellant "said that he only knew the individuals by sight and would not be able to contact them."

Stewart also stated in his affidavit that he explained to appellant the charges and his rights to a jury trial and to appeal. He said he advised appellant that accepting probation in this case would have "definite immigration consequences" because it "would be considered an aggravated felony for which he could be subject to deportation." Stewart said he read the police report and realized that the officer's version of what happened differed from what appellant had told him. Stewart said he translated the police report for appellant and asked him to explain why his recollection of the events was different from the report. Appellant said "his memory of the event was vague due to the time that had elapsed." Appellant said "he did not recall hitting the officer, but that if he did it was in self-defense." Appellant also told Stewart that he "did not recall seeing the police officer's uniform or even struggling with him" and said "he had several

drinks of alcohol that evening and did not remember how or why the melee began." Stewart told appellant that "his version of the incident was not as credible as the officer's and appellant's chances of success at trial could be adversely affected without an independent witness to the event." Stewart said he also told appellant that if he decided to have a jury trial, Stewart "could not assure him that probation would be a guarantee." Stewart said appellant asked him to negotiate a plea bargain, and that is what Stewart did.

The defense called Stewart as a witness at the habeas hearing, and his testimony about his meetings with appellant essentially repeated the statements in his affidavit. Stewart said that because appellant was uncooperative by refusing to identify the witnesses, he "was swimming in the dark." Stewart said appellant "made it clear that he wanted an offer. He wanted to work the case out" so Stewart asked the State for a plea bargain offer. Stewart explained that without appellant's cooperation, he had "no view into the facts in a way that I can make – I can try a case." Stewart said appellant said "he didn't want an investigation. He didn't want me to pursue it any further. He wanted me to work out a deal and that is what he wanted." Stewart said "[t]here was ample information out there for me to at least come to some sort of conclusion [about the case], and [appellant] provided information that led me to believe that maybe he wasn't telling the truth or there was a reason why he didn't want to tell me the truth." Stewart said the case was "[o]n its face . . . an assault of an officer and you have to know it's an officer. You have to know he's an officer to physically cause him injury . . . . And the officer's affidavit set out what happened, and [appellant] was not able to respond to that in an effective way."

When appellant testified at the hearing, he denied that he was drinking at the dance hall that night, denied that he told Stewart he did not want to contact the witnesses, and denied telling Stewart that the witnesses might have problems with immigration. Appellant agreed, however, that he never provided the witnesses' names to Stewart.

–9–

The law requires an attorney to conduct a reasonable investigation or to make reasonable decisions that make particular investigations unnecessary. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006). But when a defendant instructs his attorney not to interview certain witnesses, the defendant may not later claim his attorney's investigation was ineffective. *See Schriro v. Landrigan*, 550 U.S. 465, 475–76 (2007); *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004).

Whether appellant instructed Stewart not to contact the witnesses was disputed, and the trial court, as factfinder, resolved the conflict against appellant. Appellant's testimony that he did not give Stewart the names of the witnesses supports the trial court's implied finding that appellant instructed Stewart not to contact the witnesses. The record also supports Stewart's testimony that appellant wanted him to negotiate a plea bargain. A trial court does not abuse its discretion when it bases its decision on conflicting evidence and there is some evidence to support the decision. *See J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex. App.—Dallas 1994, no writ).

Additionally, appellant presented the testimony of his girlfriend, friends, and cousins who were at the dance hall that night. All but one testified that they did not know Flatt was an officer because it was too dark to see his uniform. One witness, who was about fifteen feet away when the incident occurred, testified he knew immediately that Flatt was an officer because of his black shirt. Appellant's girlfriend said she was about three feet away when the incident with Flatt occurred, but it was too dark for her to see Flatt's police badge or his duty belt. Although the testimony of most of appellant's witnesses generally supported appellant's testimony that he did not know Flatt was an officer, their testimony did not support his claim of self-defense. Appellant's girlfriend testified that appellant resisted Flatt's grip at first, but she did not see appellant strike the officer at all, and all the other witnesses testified that they did not see

anything that happened after Flatt and appellant fell to the floor, which, of course, is when the assault occurred.

The factfinder resolved the conflicting evidence against appellant. We conclude that appellant has not shown the trial court abused its discretion by denying habeas relief on this basis. We resolve issue one against appellant.

### Immigration Consequences

In issue two, appellant argues that his trial counsel was ineffective under *Padilla* because counsel did not advise him that he would be deported if he pleaded guilty. *Padilla* does not apply here. *Ex parte Olvera*, 2013 WL 1149926, at *1; *see Ex parte De Los Reyes*, 392 S.W.3d at 679. And prior to *Padilla*, admonitions about deportation consequences of a guilty plea were considered collateral matters that would not support a claim of ineffective assistance of counsel. *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). Consequently, we conclude that appellant has not shown his counsel was ineffective for failing to advise him of the immigration consequences of a guilty plea. We resolve issue two against appellant.

### Right to Appeal

In issue four, appellant argues that Stewart's performance was deficient because he did not advise appellant about his right to appeal. Appellant argues that if Stewart had advised him properly about his right to appeal, he would have appealed the judgment on the grounds that his counsel was ineffective and the interpreter was not sworn. But a direct appeal is usually inadequate for raising an ineffective-assistance claim because the record generally is not fully developed. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (record must show counsel's deficient performance and harm); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant did not object to the trial court's alleged failure to swear Stewart as the interpreter, and appellant has not shown how he otherwise preserved that issue for a direct

–11–

appeal. *See* TEX. R. APP. P. 33.1. Additionally, appellant does not argue that he would have changed his guilty plea if he had been advised about his right to appeal. Consequently, we review this issue under the law that applies to the appeal right of a person who entered a guilty plea.

Rule 25.2 of the Texas Rules of Appellate Procedure governs an appeal from a negotiated plea bargain where the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant. In such a case, which this is, a defendant may appeal only those matters that were raised by written motion filed and ruled on before trial or only after getting the trial court's permission to appeal. TEX. R. APP. P. 25.2. Appellant did not raise any pretrial issues and the trial court certified that appellant did not have a right to a direct appeal. *Id.*; *see* TEX. CRIM. PROC. CODE ANN. art. 44.02 (West 2006).

The record shows that appellant signed plea papers stating he waived his right to appeal and certifying he had no right to appeal by pleading guilty. And the trial court admonished appellant during the plea proceeding that he was waiving his right to appeal by pleading guilty. The trial court gave appellant a copy of the "Trial Court's Certification" during the proceeding. On the record presented, we conclude that appellant has not shown counsel was ineffective in advising him about his right to appeal. As a result, we conclude that the trial court did not abuse its discretion by denying habeas relief on this basis. We resolve issue four against appellant.

**Sworn Interpreter**

In issue three, appellant contends that his guilty plea was involuntary and the "conviction should be overturned as illegally obtained" because the trial court did not provide a sworn, independent, competent interpreter for the plea proceeding. Appellant relies on article 38.30(a) of the code of criminal procedure to support his argument. He also argues that "[p]roviding an interpreter to an accused who does not understand English is required by the Confrontation Clause and by Article I, section 10 of the Texas Constitution."

Article 38.30(a) states that an interpreter "must be sworn to interpret for the person charged" on motion of a party in a criminal proceeding or on the court's own motion. TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (West Supp. 2011). If the court does not comply with article 38.30, we review the error for harm. *See Leal v. State*, 782 S.W.2d 844, 850 (Tex. Crim. App. 1989). To show harm, an appellant must present a specific example of actual injury. *Frescas v. State*, 636 S.W.2d 516, 518 (Tex. App.—El Paso 1982, no pet.); *see Linton v. State*, 275 S.W.3d 493, 509 (Tex. Crim. App. 2009).

Appellant testified that when he went before the trial court to enter the guilty plea, Stewart did not ask if it was okay for him to interpret the hearing for appellant, and appellant did not know he had the right to a sworn interpreter. Appellant contends that Stewart did not translate the trial court's admonitions properly into Spanish and that Stewart only said, "Say yes, say no." And he contends that as a result of Stewart's inaccurate translation, he was not aware of the rights he was giving up by pleading guilty, rendering his plea involuntary.

Stewart testified that Spanish is his native language and that he is certified by the State as a Spanish translator. He testified that he accurately translated the proceedings for appellant pursuant to the oath he took when he was certified. Stewart also stated in his affidavit that appellant agreed to allow Stewart to translate the plea proceedings instead of getting an independent interpreter.

The record does not contain a motion filed pursuant to article 38.30, and the record shows that appellant was not denied an interpreter. Stewart testified that he translated the proceeding accurately. Additionally, the trial court's oral admonitions that appellant contends were not translated correctly were also contained in the plea papers, which appellant admitted he signed. The record supports the trial court's implied finding that Stewart accurately translated the proceedings and that appellant's plea was not rendered involuntary by the failure to swear the

–13–

interpreter. *See Briones v. State*, 595 S.W.2d 546, 547–48 (Tex. Crim. App. 1980). Consequently, appellant has not shown the trial court abused its discretion by denying habeas relief on this basis. We resolve issue three against appellant.

## Involuntary Plea – Generally

In issue five, appellant generally argues that his plea was rendered involuntary because of the ineffective assistance of counsel and the failure to swear the interpreter. Having resolved those issues against appellant, this issue presents nothing new for our review. We resolve issue five against appellant.

## CONCLUSION

We affirm the trial court's order.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.7(a)

111349F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE ALFREDO OLVERA

No. 05-11-01349-CR

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. W-199-81492-09.
Opinion delivered by Justice Lang-Miers, Justices Francis and Evans participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's order denying Alfredo Olvera's application for a writ of habeas corpus.

Judgment entered this 12th day of August, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE