**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

3/23/15

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-14-00501-cr
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/23/2015 10:55:59 AM
DORIAN RAMIREZ
CLERK

## No. 13-14-00501-CR

In the
**COURT OF APPEALS**
For the
**THIRTEENTH JUDICIAL DISTRICT**
Corpus Christi – Edinburg, Texas

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/23/2015 10:55:59 AM
DORIAN E. RAMIREZ
Clerk

_____

On Appeal from the 357th Judicial District Court of
Cameron County, Texas
Cause Number 2014-DHC-2879

_____

**Ex Parte Samuel Osvaldo Garcia**
Appellant
v.
**THE STATE OF TEXAS,**
Appellee

_____

**STATE'S BRIEF**

_____

*Counsel for the State of Texas*

**Luis V. Saenz**
County and District Attorney
Cameron County, Texas

**Ismael H. Hinojosa**
Assistant District Attorney
Cameron County, Texas
State Bar No. 24041102

964 E. Harrison St.
Brownsville, Texas 78520
Tel: (956) 544-0849
Fax: (956) 544-0869
ismael.hinojosa@co.cameron.tx.us

# IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1(a) and 38.2(a) (1) (A), the State hereby supplements the identification of the parties.

**Appellant:**

Samuel Osvaldo Garcia

**Counsel for Appellant:**

Rafael de la Garza (at trial)
4943 South Jackson Road
Edinburg, Texas 78539

Rafael de la Garza (on appeal)
Ricardo Ramirez
4943 South Jackson Road
Edinburg, Texas 78539

**Counsel for Appellee, The State of Texas**

Luis V. Saenz
County and District Attorney
Cameron County, Texas

Ismael H. Hinojosa
Assistant District Attorneys

964 E. Harrison
Brownsville, Texas 78520

**Trial Court Judge:**

The Honorable Oscar X. Garcia

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES……………………………………………………..ii

INDEX OF AUTHORITIES……………………………..…………………………..iv

SUMMARY OF THE ARGUMENT…………………..…………………………..1

STATEMENT OF THE FACTS……………………..……………………………2

ARGUMENT & AUTHORITIES…………………..…………………………...4

> *Padilla v. Kentucky, 559 U.S. 356 (2010) does not apply retroactively to this case; there is no credible evidence that appellant's counsel performed deficiently; and, even if applicant's counsel had performed deficiently under pre-Padilla law, there is no credible evidence that appellant was prejudiced by the alleged deficiency.*

PRAYER FOR RELIEF………………………………………………………..15

# INDEX OF AUTHORITIES

**CASES**

*Chaidez v. U.S.,* 130 S. Ct. 1103 (2013)………………………………………2,4,5,6,7,8

*Ex Parte De Los Reyes*, 392………………………………………………………2,4,7

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985)…………………………………….....12

*Padilla v. Kentucky*, 559 U.S. 356 (2010)…………………………..2,4,5,6,7,8,9,11

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App.2005)……………………9

*I.N.S. v. St. Cyr*, 533 U.S. 289, 297 (2001)………………………………………..10

*Strickland v. Washington*, 466 U.S. 668, 687 (1984)…………………5,6,7,8,9,12

**STATUTES AND RULES**

TEX. CODE CRIM. PROC. ART. 42.12 §4(e)…………………………………..…13

TEX.PENAL CODE 13.32……………………………………………………..............3

TEX.PENAL CODE 32.21………………………………………………………..…..2

TEX.RULE EVID. 609…………………………………………………..…………13

8 U.S.C. §1101(a)(43)(B)…………………………………………………………..9

8 U.S.C. §1101(a)(43)(R)……………………………………………...……….2,9

8 U.S.C. §1227(a)(2)(i)……………………………………………………………10

8 U.S.C. §1227(a)(2)(iii)……………………………………………………………10

8 U.S.C. §1229b………………………………………………………………9

**No. 13-14-00501-CR**

In the
**COURT OF APPEALS**
For the
**THIRTEENTH JUDICIAL DISTRICT**
Corpus Christi – Edinburg, Texas

_____

On Appeal from the 357th Judicial District Court of
Cameron County, Texas
Cause Number 2014-DHC-2879

_____

**Ex Parte Samuel Osvaldo Garcia**
Appellant
v.
**THE STATE OF TEXAS,**
Appellee

_____

**STATE'S BRIEF**

_____

**To the Honorable Thirteenth Court of Appeals:**

**SUMMARY OF THE ARGUMENT**

Appellant entered a plea of guilty and was convicted of the offense of possession with intent to deliver a controlled substance in an amount of at least 4 grams but less than 200 grams; a first degree felony, on January 24, 2003. Appellant's conviction became final on February 23, 2003. The U.S. Supreme

Court's ruling in *Padilla v. Kentucky,* 559 U.S. 356 (2010), does not apply retroactively. *See Chaidez v. U.S.,* 130 S. Ct. 1103 (2013). And, as a matter of state habeas law, the Texas Court of Criminal Appeals has held that the *Padilla* ruling would not apply retroactively in Texas. *See Ex Parte De Los Reyes*, 392 S.W.3d 675 (2013). As such, defendant cannot and should not be granted any relief based on the grounds that his trial counsel did not fully inform him of the immigration consequences of his plea.

Additionally, although appellant argues that he should be granted relief based on pre-*Padilla* ineffective assistance of counsel analysis, appellant has failed to show that either his trial counsel's performance was deficient or that appellant was prejudiced by any alleged deficiency.

## STATEMENT OF THE FACTS

In 1992, appellant was charged with the offense of Forgery. *See Brief of Appellant – Appendix B – Affidavit of Samuel Oswaldo Garcia*. That same year, appellant entered a plea of guilty to and was placed on probation for Forgery. *Id.* Forgery is classified as a felony offense under the laws of the State of Texas. Tex. Penal Code §32.21. Forgery is among the laundry list of offenses classified as aggravated felonies that would make a lawful permanent resident immediately deportable. 8 U.S.C. § 1101(a)(43)(R).

2

On August 23, 2002, agents with the Cameron County Drug Enforcement Task Force executed a search warrant at 2702 Calle Condessa in Harlingen, Cameron County, Texas (I C.R. at 31). While executing said search warrant, agents located and detained appellant on the premises and found 20 baggies of cocaine weighing 12.9 grams on appellant's person (I C.R. at 33). Appellant was thereafter indicted in cause number 02-CR-1042-E for the offense of Possession with Intent to Distribute a Controlled Substance in an amount of at least four (4) grams but less than two hundred (200) grams. (I C.R. at 9). This offense is a first degree felony (I C.R. at 17) which carries a punishment range of imprisonment at the Texas Department of Criminal Justice for life or for any terms of not more than 99 years or less than 5 years. Tex. Penal Code §13.32.

On December 5, 2002, appellant entered a plea of guilty to the offense charged in cause number 02-CR1042-E in exchange for the State's recommendation that appellant be sentenced to a term of imprisonment of ten (10) years and that this sentence be suspended and probated for a period of ten (10) years and that all other terms and conditions of probation be determined by the Court (I C.R. at 27). On January 24, 2003, the Court followed the plea agreement and sentenced the appellant to a term of imprisonment of ten (10) years and suspended and probated that sentence for a period of ten (10) years (I C.R. at 17).

## ARGUMENT & AUTHORITIES

**State's Response to Appellant's First Issue:**

**Appellant argues that he can proceed with a *Padilla*-style claim despite the U.S. Supreme Court's ruling in *Chaidez* and the Texas Court of Criminal Appeals ruling in *Ex Parte De Los Reyes* because of dicta by Justice Kagan's opinion that states that affirmative misrepresentation claims co-existed with other ineffective assistance of counsel claims in the pre-*Padilla* legal landscape. Neither the U.S. Supreme Court nor the Texas Court of Criminal Appeals has ever held that affirmative misrepresentation of immigration consequences claims should be treated any differently from other *Padilla* claims. As such, appellant cannot and should not be granted relief based on affirmative misrepresentation of the immigration consequences of a plea.**

Jose Padilla was the appellant in *Padilla v. Kentucky*, 599 U.S. 356 (2010). Padilla was a legal permanent resident of the United States for forty (40) years and had served in the U.S. Armed Forces during the Vietnam War. *Id.* at 359. He faced deportation after pleading guilty to transportation of marihuana in Kentucky after being told by his counsel that he "did not have to worry about immigration status since he had been in the country to so long." *Id.* In *Padilla*, the Supreme Court held that advice regarding the immigration consequences of a plea in a criminal case fell within the purview of the Sixth (6th) Amendment's right to

4

counsel and, thus, also is subject to a *Strickland* ineffective assistance claim. *Id* at 366. And the Court also held that to render effective assistance, defense counsel must inform the client whether a plea agreement carries the risk of deportation or exclusion from the U.S. *Id.* at 374. In *Padilla*, the Court was asked to limit the extent of its holding to only those based on affirmative misrepresentations of immigration consequences, however, the Court specifically declined to do so. *Id.* at 369-374.

In *Chaidez v. U.S.*, the Supreme Court held that *Padilla* announced a new rule regarding the Sixth (6th) Amendment's effective assistance of counsel analysis. 113 S. Ct. 1103, 1113 (2013). The Court held that *Padilla* did away with the traditional distinction between collateral and direct consequences of plea agreements with regards to immigration consequences and declined to extend the benefit of the *Padilla* ruling to "defendants whose convictions became final prior to *Padilla*…" *Id.*

Appellant was a legal permanent resident of the United States for sixteen (16) years and had been dishonorably discharged from the U.S. Armed Services. *See Brief of Appellant – Appendix B – Affidavit of Samuel Oswaldo Garcia.* Appellant was subject to deportation proceedings after entering a plea of guilty to and being convicted of the offense of Possession with Intent to Distribute a Controlled Substance in an amount of at least four (4) grams but less than two

hundred (200) grams in January of 2003. *Id.* Appellant's conviction was final for approximately seven years before the Supreme Court's decision in *Padilla*. In the trial court and in his brief, appellant states that *Chaidez* merely stands for the proposition that the *Padilla* rule applies to everything but affirmative misrepresentation cases (I. C.R. at 44).

Appellant's whole argument rests on four sentences of dicta from Justice Kagan's ten page majority opinion:

> True enough, three federal circuits (and a handful of state courts) held before *Padilla* that misstatements about deportation could support an ineffective assistance claim. But those decisions reasoned only that a lawyer may not affirmatively misrepresent his expertise or otherwise actively mislead his client on any important matter, however related to a criminal prosecution. See, *e.g., United States v. Kwan,* 407 F.3d 1005, 1015–1017 (C.A.9 2005). They co-existed happily with precedent, from the same jurisdictions (and almost all others), holding that deportation is not "so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea." *United States v. Campbell,* 778 F.2d 764, 769 (C.A.11 1985). So at most, Chaidez has shown that a minority of courts recognized a separate rule for material misrepresentations, regardless whether they concerned deportation or another collateral matter.

Those four (4) sentences, however, mischaracterize the substance of the opinion and completely miss the point of its holding. Specifically, *Chaidez* held that the Court in *Padilla* created a new rule for the Sixth Amendment *Strickland* effective (or ineffective) assistance of counsel analysis.

6

Before *Padilla*, the general consensus was that immigration consequences, and specifically deportation, fell outside of the ambit Sixth Amendment's right to counsel because it was considered a collateral consequence of a guilty plea. *Chaidez v. U.S.*, 113 S. Ct. 1103, 1109 (2013). As such, then, before the Court in *Padilla* could determine whether defense counsel was ineffective under *Strickland*, the court had to first consider whether *Strickland* applied at all. *Id.* at 1110. In other words, "*Padilla* had to develop new law, establishing that the Sixth Amendment applied at all, before it could assess the performance of Padilla's lawyer under *Strickland*." *Id.* at 1111.

Thus, the new rule established by *Padilla* was not only that defense counsel has a duty to inform a client about the immigration consequences of a guilty plea, but also that immigration consequences are no longer to be considered collateral consequences and from thenceforth subject to a *Strickland* analysis. This is the new rule that the *Chaidez* Court held does not apply to pre-*Padilla* cases like appellant's. As a matter of State habeas law, the Texas Court of Criminal Appeals could have chosen to make the *Padilla* rule retroactive in Texas, but has declined to do so. *Ex Parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App.2013).

Appellant's first issue rests solely on the argument that the "new rule" created by *Padilla* was that defense counsel must inform their clients regarding the immigration consequences of a guilty plea. In order to accept, adopt or apply

appellant's argument we would have to ignore the extensive discussion of collateral versus direct consequences of guilty pleas in both *Padilla* and *Chaidez* and the actual rulings in those cases. Appellants claim for relief fails on this ground.

**State's Response to Appellant's Second Issue:**

**Appellant claims that the Court abused its discretion by denying his habeas petition because he had proven a *Stirckland* claim. Assuming that affirmative misrepresentation claims should be treated differently from other *Padilla*-type claims, appellant still is not entitled to relief because he has failed to put forth any credible evidence that either his trial counsel's performance was deficient or that appellant was prejudiced by any alleged deficiency.**

Assuming, arguendo, that *Chaidez* does leave open the possibility for relief based on affirmative misrepresentations regarding immigration consequences, appellant's claims still fails because he has failed to put forth any credible evidence to show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by any alleged deficiency.

Appellant's Trial Counsel's Performance was not Deficient

In order to prove that appellant's counsel at trial rendered ineffective assistance, appellant must prove the two-prongs of the *Strickland* test by a preponderance of the evidence. *Strickland v. Washington*, 466 U.S. 668, 687

8

(1984); *Salinas v. State,* 163 S.W.3d 734, 740 (Tex.Crim.App.2005). Under *Strickland,* appellant must first show that "counsel's representation fell below an objective standard of reasonableness*."* For this particular case, the objective standard of reasonableness can be found in the holding of *Padilla* itself; "When the law is not succinct and straightforward… a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Padilla v. Kentucky,* 559 U.S. 356, 369 (2010). Appellant's appeal counsel may attempt to argue that the deportation consequence in this case was "truly clear," however, a review of the record shows this was not the case.

In his brief, appellant states the grounds necessary to obtain relief from deportation proceedings under 8 U.S.C. §1229b; among them is the requirement that appellant not be convicted of any "aggravated felony." Without a doubt, the offense for which appellant was convicted in January of 2003 was an "aggravated felony" within the meaning of 8 U.S.C. §1101(a)(43)(b). However, even before entering a plea of guilty in cause number 02-CR1042-E, appellant may have already been subject to deportation proceeds based on his "aggravated felony" conviction for Forgery in 1992. *See Brief of Appellant – Appendix B – Affidavit of Samuel Oswaldo Garcia.* Pursuant to 8 U.S.C. §1101(a)(43)(R) Forgery is also

9

considered an aggravated felony. Appellant's counsel at this point must then know that not only is appellant facing a new "aggravated felony" charge, but also has a previous aggravated felony conviction for which he is considered deportable pursuant to 8 U.S.C. §1227(a)(2)(i) and 8 U.S.C. §1227(a)(2)(iii).

In 1996, the U.S. Congress passed the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigration Responsibility Act. Both of these acts withdrew the U.S. Attorney General's discretion to waive deportation in certain circumstances. *I.N.S. v. St. Cyr*, 533 U.S. 289, 297 (2001). Before the passage of these two acts, the Attorney General could waive deportation in cases involving aggravated felonies under § 212(c) of the Immigration and Naturalization Act. *Id.* at 295. After the acts, the Attorney General had no such power. In *St. Cyr*, the Supreme Court ruled that the acts did not apply retroactively and, as such, the Attorney General still had the power to cancel deportation proceedings with regards to cases involving aggravated felonies that occurred before the enactment of these two acts. *Id.* at 326. *St. Cyr* was decided on June 25, 2001.

Appellant's trial counsel was faced with the following scenario: First, a client who has been sitting in jail for approximately 2 months on a charge[1], for

---

[1] Defendant was arrested on August 23, 2002 and the record is not clear on whether the defendant was able to make bond or whether Immigration and Customs Enforcement agents placed an

which if convicted, would be considered a deportable offense and who has a conviction in 1992 for another deportable offense. Next, in 1996, Congress took away the Attorney General's discretion to cancel deportation proceedings in cases such as that of appellant, but the Supreme Court gave that discretion back five (5) years later and approximately sixteen (16) months before appellant's arraignment. Also, even if you were able to obtain an acquittal on appellant's behalf (which could result in a delay of another 6 months to a year) appellant would still have to navigate the waters of 212(c) of the Immigration and Naturalization Act and how the Attorney General might implement that program after a five (5) year hiatus, to determine whether appellant might get deported anyway.

Facing a situation that was not "succinct and straightforward", appellant's trial counsel did what *Padilla* requires and informed appellant that his plea "may result in deportation." *See Brief of Appellant – Appendix C – Affidavit of Attorney Daniel Sanchez*. Appellant constantly refers to his own affidavit to support the proposition that trial counsel affirmatively misrepresented the immigration consequences of his plea, however, there is little mention of trial counsel's affidavit which contradicts appellant's version of events. Appellant's trial counsel simply states that he informed appellant that his plea may result in his deportation, which is all that is required by *Padilla*. *See Brief of Appellant – Appendix C –*

immigration hold on defendant (I C.R. at 32). However, notice of arraignment was sent to appellant at the Cameron County jail on September 16, 2002 (I C.R. at 11).

11

*Affidavit of Attorney Daniel Sanchez*. Appellant's habeas application was denied without a hearing (I C.R. at 60). Therefore, we must assume that the trial court found trial counsel's affidavit more credible than appellant's own affidavit.

Appellant was not Prejudiced by any alleged Deficiency

Even if appellant could prove, which he cannot, that his trial counsel's performance fell below an object standard of reasonableness, he still must prove that he was prejudiced by the alleged deficiency. Prejudice is the second prong of the *Strickland* test and states that appellant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In the realm of plea negotiations, the second *Strickland* prong was more clearly defined in *Hill* as follows; "…in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In his affidavit, appellant claims that his immigration status in this country was his primary concern during plea negotiations. *See Brief of Appellant – Appendix B – Affidavit of Samuel Oswaldo Garcia*. Appellant also claims that had he known that by entering a plea of guilty he would become deportable and in fact would be deported, he never would have entered a plea of guilty in cause number

02-CR-1042-E. *See Brief of Appellant – Appendix B – Affidavit of Samuel Oswaldo Garcia*. The Trial Court considered that same affidavit and denied appellant's request for relief (I C.R. at 60). As such, the trial court did not find appellant's affidavit to be credible.

As had been stated earlier, the 20 baggies of cocaine for which appellant were charged in 02-CR-1042-E were found on appellant's person (I. C.R. at 32). In order to stand a chance at an acquittal, appellant would have to have either the co-defendant admit that all the cocaine belonged to the co-defendant and that the co-defendant forced appellant to hold the 20 baggies of cocaine for him or, appellant would have had to take the stand and told the same story to the jury. In taking the stand, appellant would have had to admit to the prior forgery conviction both as a prior felony conviction and a crime of moral turpitude. Tex. Rule Evid. 609. Appellant would have to admit to the jury that he is a felon, a thief and a liar, but still ask that they believe his outlandish story. If the jury did not believe his story and did convict him of the offense, he would have to elect to have the trial court assess his punishment to have any chance at a probated sentence[2]. Having a prior felony conviction on his record and having forced the State to trial, it seems unlikely that the State would have agreed to recommend probation after a guilty verdict. Appellant would have been left to the mercy of the trial court and if the

---

[2] Appellant's forgery conviction would have made him ineligible for probation from a jury pursuant to Tex. Code. Crim. Proc. 42.12 §4(e).

13

trial court elected not to grant probation, defendant would face a prison sentence between five to ninety nine years or life in prison and would still be subject to deportation after having been found guilty of an aggravated felony.

However, in this case, the State was offering a recommendation of probation in exchange for the appellant's plea of guilty (I. C.R. at 27). Instead of risking a trial and a prison sentence from the judge, appellant could accept the offer, enter a plea of guilty and, if the trial court did not agree to follow the State's recommendation for probation, appellant could still withdraw his plea and go to trial. Appellant claims that it was the conviction in this cause that made him deportable, but as has been previously discussed, his forgery conviction is also considered an aggravated felony for immigration purposes and would subject appellant to deportation.

Whether appellant would be deported or not is murky at best and there could be no guarantees that appellant would not be deported even if acquitted in cause number 02-CR-1042-E. What was a very clear possibility at the time, however, was that the appellant would serve prison time for the offense. A recommendation of probation from the State gave appellant the opportunity to avoid prison and "test the waters" with the trial court while still being able to go to trial if everything went wrong. Under those circumstances, it is just as likely that appellant pleaded guilty to avoid prison time as in response to the alleged affirmative

14

misrepresentation from his trial counsel. Thus, appellant cannot prove that his trial counsel's performance prejudiced him in any way.

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, The State prays the Court of Appeals will overrule Appellant's two issues on appeal, deny any and all other relief requested, and affirm the disposition herein.

**Respectively Submitted,**
**Luis V. Saenz**
County and District Attorney


*/s/ Ismael H. Hinojosa___*
**Ismael H. Hinojosa**
Assistant District Attorney
Cameron County, Texas
State Bar No. 24041102

964 E. Harrison St.
Brownsville, Texas 78520
Tel: (956) 544-0849
Fax: (956) 544-0869
ismael.hinojosa@co.cameron.tx.us

15

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing State's Appellate Brief was served in compliance with Tex. R. App. P. 9.5 on this the 23[th] day of March 2015, to the following attorney of record for Appellant, Samuel Oswaldo Garcia, by email:

Rafael de la Garza (on appeal)
Ricardo Ramirez
4943 South Jackson Road
Edinburg, Texas 78539
(P) 956-533-1426
(F) 956-284-0518
Rafael@dlgrlaw.com


*/s/ Ismael H. Hinojosa*_____
**Ismael H. Hinojosa**


## CERTIFICATE OF WORD COUNT

I certify that this document contains 3,842 words (counting all parts of the document). The body text is in 14 point font, and the footnote text is in 12 point font.


*/s/ Ismael H. Hinojosa*_____
**Ismael H. Hinojosa**