

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1457-11

### EX PARTE JOEL DE LOS REYES, Applicant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. WOMACK, J., concurred. MEYERS, J., not participating.

### O P I N I O N

Applicant below, Joel De Los Reyes, filed an application for writ of habeas corpus, in which he alleged that he received ineffective assistance of counsel because his trial counsel failed to advise Applicant that he was almost certainly subject to deportation after he pled guilty to a second crime of moral turpitude. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010); *see also* 8 U.S.C. § 1227(a)(2)(A)(ii). The trial court denied the application, but the El Paso Court of Appeals granted relief, holding that the rule from

*Padilla* should be applied retroactively and that trial counsel was ineffective under that rule. *Ex parte De Los Reyes*, 350 S.W.3d 723, 728-31 (Tex. App.—El Paso 2011). We granted the State's petition for discretionary review and will reverse the judgment of the court of appeals because *Padilla* announced a new rule of constitutional criminal procedure not applicable to cases pending on collateral review. *Chaidez v. United States*, No. 11-820, 2013 U.S. LEXIS 1613 (2013).

In 1993, Applicant was admitted to the United States as a permanent legal resident. In 1997, Applicant pled guilty to a charge of misdemeanor theft. On October 25, 2004, he entered a guilty plea to a second charge of misdemeanor theft and was sentenced to one day of confinement in the El Paso County Jail and ordered to pay a fine and court costs. *See* TEX. PENAL CODE § 31.03(a). The plea document signed by Applicant admonished him as follows, in pertinent part: "I further understand that in the event I am not a citizen of the U.S.A., my plea of guilty may result in deportation, exclusion from admission to the U.S.A. or denial of naturalization under federal law."

Applicant neither filed a timely motion for new trial in the trial court nor filed a direct appeal. *See* Tex. R. App. P. 26.2. Because Applicant failed to file a direct appeal to this Court, he was ineligible to file a petition for a writ of certiorari,[1] and his conviction became final on December 10, 2004. *See* Tex. R. App. P. 4.1. According to the

---

[1]*See* SUP. CT. R. 13 (allowing a defendant to file a petition for a writ of certiorari if he is appealing the refusal of the state court of last resort to hear his case or its judgment affirming his conviction).

Immigration and Nationality Act, "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." *See* 8 U.S.C. § 1227(a)(2)(A)(ii). Because theft is a crime of moral turpitude,[2] Applicant was eligible to be deported when his second theft conviction became final. Consequently, Applicant was given notice of deportation and taken into custody by the Department of Immigration and Customs Enforcement in February of 2010.[3]

The following month, on March 31, 2010, the Supreme Court issued its opinion in *Padilla v. Kentucky*, 130 S. Ct. 1473. In *Padilla*, the defendant argued that his trial counsel failed to advise him of deportation consequences before he entered a guilty plea and that he would have gone to trial had he received that advice. The Supreme Court began by rejecting the Kentucky Supreme Court's holding that a defendant's Sixth Amendment right to effective counsel does not extend to the collateral consequences of a defendant's guilty plea. The Supreme Court determined that "[t]he collateral versus direct distinction is . . . ill-suited to evaluating a *Strickland*[4] claim concerning the

---

[2]*Ex parte Rodriguez*, 378 S.W.3d 486, 490 (Tex. App.—San Antonio 2012, no. pet.); *LaHood v. State*, 171 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see generally Fuentes-Cruz v. Gonzales*, 489 F.3d 724, 726 (5th Cir. 2007).

[3]According to trial counsel's testimony at the writ hearing, the notice of deportation was dated February 23, 2010.

[4]*Strickland v. Washington*, 466 U.S. 668 (1984).

specific risk of deportation" and, thus, "*Strickland* applies to Padilla's claim." *Id.* at 1482. Then, in its *Strickland* application, the Court held that defense attorneys must advise non-citizen clients about the deportation risks of a guilty plea. *Id.*[5]

On May 11, 2010, while in custody at a United States Immigration and Detention Facility, Applicant filed an application for writ of habeas corpus seeking a new trial for the 2004 theft offense. He argued, in part, that his guilty plea was involuntary because trial counsel failed to inform him that his plea would lead to deportation.[6] *See Padilla*, 130 S. Ct. 1473. On June 16, 2010, Applicant filed an amended application for writ of habeas corpus, which contained a memorandum of law and two affidavits (one from Applicant and one from his trial counsel). Applicant stated in his affidavit that his attorney did not advise him that he would face deportation by pleading guilty to another theft charge. Similarly, trial counsel stated in his affidavit that he did not properly review the immigration consequences, and Applicant's deportation is a direct result of his failure to properly advise his client as to the outcome and consequences of a plea. On June 30,

---

[5]The Supreme Court decided that counsel had engaged in deficient performance under the *Strickland* standard by failing to advise his client that a guilty plea made him subject to deportation. *Padilla*, 130 S. Ct. at 1483. The Court remanded the case on the issue of prejudice. *Id.* at 1483-84.

[6]The State responded by filing a motion to dismiss the application on the basis that the trial court lacked jurisdiction to consider the application because Applicant was in federal custody. When the trial court denied Applicant's writ application, it also denied the State's motion. On appeal, the State reasserted its argument that the trial court lacked jurisdiction over Applicant's application, but the court of appeals disagreed, denying the State's request to dismiss. *De Los Reyes*, 350 S.W.3d at 727-28.

2010, the State filed its answer to the amended writ application. The State argued, in part, that *Padilla* did not apply retroactively to the writ application because the conviction became final before *Padilla* was issued.

On July 8, 2010, the trial court heard evidence and argument on Applicant's writ application. Applicant's trial counsel was the only witness to testify during the hearing. Trial counsel reiterated his affidavit testimony that he did not discuss the possible immigration consequences with Applicant prior to the guilty plea. On cross-examination, however, trial counsel stated that it is part of his regular practice to review the plea papers with his clients. At the close of the hearing, the trial court denied the instant application. The trial court stated that, although similar to the instant case, *Padilla* differed in that the issue before the Supreme Court was the conduct and the advice that counsel gave or failed to give to the defendant. The trial court noted that the written plea agreement signed by Applicant in 2004 included an admonishment regarding the potential effect on Applicant's immigration status. Thus, the trial court held that, even if there was a failure by defense counsel to notify Applicant of the immigration consequences of his plea, the written admonishment was sufficient to give Applicant notice that a plea of guilty could have resulted in deportation.

On direct appeal, the El Paso Court of Appeals reversed the trial court's ruling. *De Los Reyes*, 350 S.W.3d 723. The court of appeals initially held that the rule announced in *Padilla* applied retroactively in post-conviction habeas corpus proceedings. *Id.* at 729. It

reasoned that the *Padilla* rule "was not a 'new rule' as defined by *Teague*,[7] but an instance in which the well-established standard for determining claims of ineffective assistance of counsel was applied to a specific circumstance; i.e., counsel's responsibility to inform a non-citizen of the potential impact a guilty plea may have on his or her immigration status." *Id.* The court then determined that Applicant was denied his right to effective assistance of counsel because his attorney failed to inform him that a guilty plea would have a negative impact on his status as a permanent resident in the United States and this deficient performance prejudiced the defense. *Id.* at 730-32.

We granted the State's petition for discretionary review to address the retroactivity of *Padilla*. Specifically, the ground for review asks, "Did the Court of Appeals err in holding that *Padilla v. Kentucky*, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), applied retroactively to the collateral review of state convictions that were final when the *Padilla* opinion was issued?"

Under *Teague v. Lane*, 489 U.S. 288, 301 (1989), the retroactivity of criminal-procedure decisions from the Supreme Court turns on whether those decisions are novel. Generally, when a "new rule" is announced, a defendant whose conviction is already final may not benefit from that decision in a habeas or similar proceeding.[8] *Id.* A case

---

[7]*Teague v. Lane*, 489 U.S. 288 (1989) (explaining that a new rule for the conduct of criminal prosecutions is not to be applied retroactively); *see also* discussion infra.

[8]*Teague* provided two exceptions that, when applicable, allow a defendant to benefit from a "new rule" on collateral review: (1) "watershed rules of criminal procedure" and (2) rules placing "conduct beyond the power of the government to proscribe." *Teague*, 489 U.S. at 311.

announces a new rule "when it breaks new ground or imposes a new obligation" on the government. *Id.* That is, "a case announces a new rule if the result was not *dictated* by a precedent existing at the time the defendant's conviction became final." *Id.*

Neither the trial court nor the court of appeals had the benefit of the recent opinion of *Chaidez v. United States*, 2013 U.S. LEXIS 1613 (2013), in which the United States Supreme Court explicitly held that *Padilla* announced a new rule and, thus, does not apply retroactively to cases already final on direct review. Applying *Teague*, the Supreme Court explained that *Padilla* did more than simply apply *Strickland*'s general standard to a set of facts. *Id*. at *11-12. Rather, before applying the two-step *Strickland* analysis, *Padilla* first considered the threshold question of whether advice about deportation was "'categorically removed' from the scope of the Sixth Amendment right to counsel because it involved only a 'collateral consequence' of conviction, rather than a component of a criminal sentence." *Id*. at *12. In other words, "prior to asking *how* the *Strickland* test applied, *Padilla* asked *whether* that test applied." *Id.*

That threshold question had come to the Court unsettled, as *Hill v. Lockhart*, 474 U.S. 52 (1985), had explicitly left open the question of whether the Sixth Amendment right extends to collateral consequences. *Chaidez*, 2013 U.S. LEXIS 1613, at *18-19. Consequently, when the Supreme Court handed down *Padilla* and held that the *Strickland* analysis applies to claims concerning the specific risk of deportation, it answered a question about the Sixth Amendment's reach that had not previously been decided. In

doing so, it broke new ground and imposed a new obligation. *Id.* (citing *Teague*, 489 U.S. at 301). Therefore, because *Padilla* imposed a "new rule" of constitutional criminal procedure, *Teague* provides that a defendant whose conviction was already final at the time that *Padilla* was handed down may not benefit from that decision in a habeas or similar proceeding. *Teague*, 489 U.S. at 301; *see Chaidez*, 2013 U.S. LEXIS 1613, at *29.

We recognize that we could accord retroactive effect to *Padilla* as a matter of state habeas law. *See Danforth v. Minnesota*, 552 U.S. 264 (2008) (holding that *Teague* does not constrain "the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion"). But we decline to do so. We adhere to the retroactivity analysis in *Chaidez* and its holding that *Padilla* does not apply retroactively. This Court follows *Teague* as a general matter of state habeas practice,[9] and this case does not present us a reason to deviate here.

Turning to the case before us, Applicant cannot benefit from the retroactive application of *Padilla*. Applicant's second theft conviction became final on December 10, 2004. *See* Tex. R. App. P. 4.1. The Supreme Court announced its decision in *Padilla* on March 31, 2010. Under *Chaidez*, "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." *See Chaidez*, 2013 U.S. LEXIS 1613, at *29. Therefore, Applicant may not rely on *Padilla* in arguing that he was denied effective

---

[9]*See, e.g., Ex parte Lave*, 257 S.W.3d 235 (Tex. Crim. App. 2008).

assistance of counsel.

Because the rule from *Padilla* does not apply retroactively to cases already final on direct review, we will reverse the judgment of the court of appeals, and we reinstate the order of the trial court. This Court will not entertain a motion for rehearing.

Delivered: March 20, 2013

Published