COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | No. 08-15-00047-CR |
| § | |
| EX PARTE ERIKA GONZALEZ, § | Appeal from the |
| § | |
| § | Criminal District Court No. 1 |
| § | |
| § | of El Paso County, Texas |
| § | |
| § | (TC# 20090D05031-DCRH) |
| § | |

# **O P I N I O N**

Erika Gonzalez appeals the denial of her application for habeas corpus relief from her 2010 guilty plea to one count of possessing a controlled substance. In five issues, Gonzalez advances two separate theories of ineffective assistance of counsel, contends that she did not enter into her plea knowingly and voluntarily because she does not speak English, and maintains she is actually innocent of the crime to which she pleaded guilty. We will affirm the trial court's denial of relief.

## **BACKGROUND**

In 2009, Gonzalez was indicted on two counts of attempting to deliver a controlled substance. The State alleged that Gonzalez sold cocaine and clonazepam to an undercover police officer on or about May 22, 2009. Upon the advice of trial counsel Ben Ivey, Gonzalez pleaded

guilty to one count of the lesser offense of possessing a controlled substance and accepted deferred adjudication.

On October 17, 2014, Gonzalez filed for a writ of habeas corpus. Gonzalez, through a Spanish-language translator, testified at the writ hearing that she did not understand English and that her husband Christopher, who was also Ivey's client in a different case, served as her translator during office visits with Ivey. Gonzalez insisted that she did not understand what was going on at the plea hearing and could not read the plea papers she signed, but agreed to the plea based solely on Ivey's advice. On cross-examination, the State produced a transcript of the plea of hearing—in which Gonzalez testified in English—and asked her why she was able to answer questions that did not involve a simple yes-no answer. For example, when the trial court asked her "Are you a United States citizen?" she answered "I'm a resident," and when asked where she had gone to school, Gonzalez said "Coronado," referencing a local high school in El Paso. Gonzalez stated that she was able to understand and answer those particular questions in English because they were simple, common questions.

Gonzalez, a non-citizen permanent resident, further testified that Ivey explained to her that if she pleaded guilty to the lesser offenses, she would obtain probation and avoid deportation. He also urged her to take the plea because the jury would see her unsympathetically and would likely "punish" her for having children in the car during the transaction. He also stressed that if she did not plea, she would be deported. At the writ hearing, Gonzalez maintained that she was innocent and denied being at the scene of the offense.

Gonzalez's husband Christopher testified at the hearing. Gonzalez testified that his wife did not speak English. Gonzalez further stated that his wife "had nothing to do with it" and that he wanted to fight the case. On cross-examination, Gonzalez admitted he did not know where

2

his wife was that day or what she was doing because he was at work.

Attorney Ivey did not testify at the hearing, but did submit two affidavits that were admitted into evidence. In his first affidavit, Ivey stated, in relevant part:

> From my recollection and review of the complaint affidavit in the case, the plea was completely supported by the evidence. Ms. Gonzalez made a transaction with an undercover officer for clonazepam and cocaine, while Ms. Gonzalez['s] children were present in Ms. Gonzalez['s] vehicle. The Assistant District Attorney made an offer to reduce the charge to possession instead of her pleading to delivery of a controlled substance, and Mr. Duke also agreed to dismiss count II of the indictment concerning the clonazepam. According, I advised Ms. Gonzalez that I thought this was a deal worth taking. In my experience, anyone charged with delivery of controlled substance is given an offer of prison time, and the El Paso District Attorney's office had been very successful in obtaining prison sentences in these types of cases. In addition, there were children involved in this transaction which would have been much more damning to Ms. Gonzalez if we had taken the case to trial.
>
> I advised her that if she took this deal it is possible that she will be deported, but the chances for her were better since she was pleading to simple possession instead of delivery. *At no time did I advise nor promise Ms. Gonzalez that she would not be deported by pleading to this case.*
>
> .    .    .
>
> As to the conflict of interest, I represented Christopher Gonzalez on a different matter, on a different date, on different cause numbers. Advancing Christopher Gonzalez['s] case in no way hindered my representation of Erika Gonzalez in her case. In fact, Mr. and Mrs. Gonzalez[s'] cases were very much aligned during Ms. Gonzalez['s] proceedings. [Emphasis in original].

In his second affidavit, Ivey, who does not speak Spanish, stated that Gonzalez spoke English, that all of their meetings were conducted in English, that her husband did not serve as her interpreter during office visits, and that she was able to understand everything in English without the aid of a translator.

The State also submitted the complaint affidavit from Detective Joseph Williamson, the undercover police officer who conducted the sting operation in this case. In the affidavit, Detective Williamson said he had good reason to believe that "on or about the 22nd day of May,

3

2009, . . . one Erika Gonzalez, Hereinafter called the DEFENDANT, did then and there unlawfully, Intentionally/Knowingly delivered a controlled substance listed in penalty group 3[.]" The affidavit is typewritten, save for the letter "K" in "Erika," which was handwritten over an unknown typewritten letter. Detective Williamson maintained that Gonzalez sold an undercover officer cocaine and clonazepam in exchange for $250.

The trial court denied habeas relief, finding, among other things, the testimony of Christopher and Erika Gonzalez "not to be credible in any respect." This appeal followed.

## DISCUSSION

The applicant in a habeas corpus proceeding bears the burden of proving she is entitled to post-conviction relief by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). We review the trial court's grant or denial of habeas corpus for abuse of discretion, viewing the facts in the light most favorable to the trial court's ruling and deferring to the trial court in matters involving a determination of credibility or demeanor. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex.Crim.App. 2006); *Ex parte Cisneros*, No. 08–11–00180–CR, 2013 WL 1281995, at *3 (Tex.App.--El Paso Mar. 28, 2013, no pet.)(not designated for publication).

### *Ineffective Assistance of Counsel*

By her first three issues, Gonzalez presents two separate ways in which trial counsel Ben Ivey allegedly rendered constitutionally ineffective assistance. Neither theory Gonzalez advances is meritorious.

### Applicable Law: The *Strickland* Standard

The Sixth Amendment provides a defendant with the constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80

4

L.Ed.2d 674 (1984). Counsel renders constitutionally ineffective assistance warranting reversal where (1) his performance fell below an objective standard of reasonableness, and (2) that the defendant suffered prejudice, i.e., that there was a reasonable probability that but for the actions of defense counsel, the outcome of proceedings would be different. *Id*. at 687-88, 104 S.Ct. at 2064.

### Failure to Disclose Immigration Consequences of Plea Deal

Issues One and Two center around whether Gonzalez can state a valid ineffective assistance of counsel claim based on her lawyer's purported failure to warn her about the immigration consequences of her plea, given that she pleaded guilty and agreed to deferred adjudication twelve days before the United States Supreme Court began requiring defense counsel to advise noncitizen clients if a criminal conviction would render them presumptively removable from the United States. *See Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

It is now well-settled law that *Padilla* created a "new rule" of constitutional procedure that does not apply retroactively to convictions that became final before the Supreme Court handed down *Padilla* on March 31, 2010. *See Chaidez v. United States*, 133 S.Ct. 1103, 1113, 185 L.Ed.2d 149 (2013); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013)(refusing to extend *Padilla*'s application retroactively on state grounds). The question here is whether Gonzalez's conviction became "final" for federal immigration purposes before or after *Padilla* took effect. In Issue One, Gonzalez contends that *Padilla* applies to her case because although she pleaded guilty to two counts of possession before *Padilla* was issued, she was placed on deferred adjudication, which suspended execution of the judgment and prevented it from becoming final until the State moved to adjudicate after March 31, 2010. The State

5

counters that even if the judgment was not final under state law until after March 31, 2010, because the trial court deferred adjudication, we must use the date Gonzalez entered her plea to determine whether *Padilla* reaches her claim on habeas review. We agree with the State.

Although a deferred adjudication is not necessarily "final" in the sense that the judgment is not fully executed at the time of imposition, that distinction does not matter for federal immigration purposes. The admission of guilt underpinning the state law deferred adjudication plea to an "aggravated felony" is sufficient to trigger administrative removability from the United States. *See State v. Guerrero*, 400 S.W.3d 576, 588 (Tex.Crim.App. 2013); 8 U.S.C.A. § 1101(a)(48)(A)(West 2014)(defining "conviction" for immigration purposes as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where--(i) . . . the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."). As such, the date we use to determine whether *Padilla* applies in this habeas case is the date Gonzalez pleaded guilty. Because this guilty plea came before *Padilla*'s release, Gonzalez cannot rely on *Padilla* in making her ineffective assistance of counsel claims.

In Issue Two, Gonzalez argues that even if *Padilla* does not apply retroactively to her case, we may still rely on pre-*Padilla* cases from the United States Courts of Appeals for the Second and Ninth Circuits stating that an attorney who affirmatively misrepresents immigration consequences commits ineffective assistance of counsel. *See United States v. Kwan*, 407 F.3d 1005, 1015-17 (9th Cir. 2005); *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002). We disagree. Although the Second and Ninth Circuits recognized in the early 2000s that the gravity of the collateral immigration consequences of a criminal conviction are a significant factor that

must be discussed between a defense counsel and her client, the United States Supreme Court did not constitutionalize that principle nationally until *Padilla* was decided in 2010. The United States Supreme Court also made clear in *Chaidez* that the rule set out in *Padilla* was new and could not be applied to cases on collateral review after *Padilla* was decided. More to the point, while the Second and Ninth Circuits may have recognized the right articulated in *Padilla* sooner, the state courts of Texas did not. As this Court has previously noted, "[p]re-*Padilla*, trial counsel did not violate a defendant's Sixth Amendment right to effective assistance of counsel by failing to properly advise his client about collateral consequences of the prosecution." *Ex parte Carpio-Cruz*, No. 08-10-00240-CR, 2014 WL 5316988, at *2 (Tex.App.--El Paso Oct. 17, 2014, no pet.)(op. on remand, not designated for publication). Indeed, when the Texas Court of Criminal Appeals was given the opportunity to make *Padilla* retroactive on state law grounds, it explicitly declined to do so. *See Ex parte De Los Reyes*, 392 S.W.3d at 679. As such, we cannot rely on Second and Ninth Circuit precedent as a retroactivity work-around. Gonzalez missed the *Padilla* retroactivity cut-off point by twelve days and as such cannot use any failure to give proper advice as to immigration consequences as a way to challenge her conviction in habeas.

Issues One and Two are overruled.

### Conflict of Interest from Dual Representation

In Issue Three, Gonzalez argues she was denied effective assistance of counsel because Attorney Ben Ivey labored under a conflict of interest by representing both her and her husband Christopher in criminal proceedings. Specifically, Gonzalez asserts that her husband was prepared to testify at her trial and take full responsibility for the May 22 transaction by attesting to the fact that he was a drug dealer and she was only a housewife. That testimony, Gonzalez argues, would have created a reasonable doubt as to the identity of the person who sold drugs to

the undercover police officer on May 22 and suggested the woman in the car was someone other than her. However, Gonzalez alleges that trial counsel, who also represented her husband in another drug transaction case, would have prevented her husband from testifying at her trial for fear that the husband's testimony would subject him to increased punishment in the other case. Because a conflict between their defenses arose, and because trial counsel allegedly chose to further the husband's best interests and not those of Gonzalez, she maintains she was denied effective assistance of counsel on conflict of interest grounds. We disagree that the evidence presented shows the existence of a conflict of interest that affected Gonzalez's defense.

"While ineffective assistance of counsel may result when an attorney labors under a conflict of interest, an attorney's joint representation of two or more defendants is not per se violative of constitutional guarantees of effective assistance." *Rueda v. State*, No. 08-08-00186-CR, 2010 WL 2163808, at *2 (Tex.App.--El Paso May 28, 2010, no pet.)(not designated for publication). "A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance." *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997). "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Id*. "To show the required adverse impact, the defendant must show that some plausible defensive strategy or tactic might have been pursued but was not due to the conflict of interest." *Ex parte Knelsen*, No. 08-13-00013-CR, 2015 WL 5047524, *4 (Tex.App.--El Paso Aug. 26, 2015, pet. granted)(not designated for publication).

We conclude that in this case, the trial court correctly decided that there was no conflict

of interest that arose out of Ivey's dual representation of husband and wife. Although Christopher and Erika Gonzalez were both charged with drug delivery offenses, they were not codefendants charged with conspiracy or with participating in the same drug delivery offenses named in this indictment together. Instead, Ben Ivey represented Erika Gonzalez on charges related to one drug transaction, and also represented her husband Christopher with respect to other unrelated criminal charges. Limited representation for certain purposes or for different crimes may eliminate or at least mitigate the scope of potential conflict. *See Routier v. State*, 112 S.W.3d 554, 584-85 (Tex.Crim.App. 2003)(wife's lawyer's limited representation of husband in pretrial gag order violation hearing did not create a conflict of interest that would have prevented wife, charged with capital murder, from presenting a defense that shifted blame off of her and onto her husband). Furthermore, "[i]n the context of multiple representation cases, an actual conflict arises when one defendant stands to gain *significantly* by counsel adducing evidence or arguments that are damaging to the cause of a codefendant whom counsel is also representing." [Emphasis added]. *Rueda*, 2010 WL 2163808, at *2. Here, even if Erika and Christopher were to somehow be considered codefendants, Erika Gonzalez would not have stood to gain significantly from her husband's testimony. At the habeas hearing, Christopher Gonzalez stated that had the case gone to trial, he would have taken full responsibility for the drug delivery. Yet as the State correctly points out, Christopher Gonzalez could not provide an alibi for his wife that day because he did not know where she was or what she was doing during the day while he was at work, nor did he explain how the delivery was his "fault" or otherwise raise evidence that would show the woman in the car was someone other than Erika Gonzalez beyond some testimony indicating that the couple only had one car that he used while he was at work.

On the record before us, we find that no conflict of interest existed that would have

9

rendered Ben Ivey's representation of both Christopher and Erika Gonzalez constitutionally impermissible under the Sixth Amendment. Issue Three is overruled.

### *Knowing and Voluntary Plea*

In Issue Four, Gonzalez avers that she did not knowingly and voluntarily enter into her plea agreement, both because her attorney misinformed her about the immigration consequences, and because she did not speak English well enough to appreciate the plea terms or proceeding.

A guilty plea requires a defendant to waive three constitutional rights: "the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006). "Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily." *Id*. "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Id*. "A defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and art. 26.13, is presumed to have entered a voluntary and knowing plea." [Footnote omitted]. *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex.Crim.App. 2004).

As we previously stated, Ivey had no duty to accurately inform Gonzalez of her plea's collateral immigration consequences because the United States Supreme Court did not impose that duty onto defense attorneys until issuing that new rule in *Padilla*, which came after her plea agreement. That portion of Gonzalez's argument has no bearing on our analysis here. With respect to Gonzalez's argument that she does not speak English, the trial court expressly found that Gonzalez spoke English well enough to understand the nature of her plea. That conclusion is supported by sufficient evidence in the record. Gonzalez indicated that she understood certain

questions at the hearing, Ben Ivey's affidavit asserts that Gonzalez spoke English without any problems during their pretrial interviews, and the trial court had the ability to assess her credibility and demeanor. We will defer to the trial court on this point involving credibility.

Issue Four is overruled.

### *Actual Innocence*

Finally, in Issue Five, Gonzalez maintains that she is actually innocent of the crimes for which she pleaded guilty. The State counters that Gonzalez cannot prove actual innocence on the sparse record presented. We agree.

A guilty plea does not preclude a habeas applicant from asserting she is actually innocent. *Ex parte Tuley*, 109 S.W.3d 388, 393 (Tex.Crim.App. 2002). However, an actual innocence claim raised in a habeas corpus application is not an attack on the sufficiency of the evidence presented at trial. Rather, "the successful applicant shows by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of . . . new evidence." *Id.* at 392.

The State correctly notes that the evidence Gonzalez presented in this habeas corpus application is not "new" in the sense that it was previously unavailable when she pleaded guilty. *See Ex parte Brown*, 205 S.W.3d 538, 545 (Tex.Crim.App. 2006)(evidence is new if it "was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence"). However, even assuming the testimony was new evidence, it fails to clearly and convincingly establish that no reasonable juror could have found Gonzalez guilty of the offense. Although Gonzalez denied being at the scene of the crime, Detective Williamson's affidavit affirmatively identified Erika Gonzalez as the woman who sold cocaine and clonazepam to an undercover police officer from inside the car. Further, Christopher Gonzalez's

11

testimony that his wife was not guilty of the offense and that he was the one responsible for the drug transaction was vague and did not specify exactly why she was not guilty or how he was responsible, particularly given that the seller was a woman. Christopher also could not establish an alibi for her at the time of the offense. We note that Christopher did state that he believed at the time the family only had one car, and that he used it for work. That fact, coupled with Gonzalez's assertion of innocence, could raise an issue as to identity. Even so, how this issue is resolved on habeas largely hinges on whether the trial court believed Gonzalez and her husband were credible witnesses. Here, the trial court did not find their testimony credible. We defer to that credibility finding.

Because Gonzalez cannot show by clear and convincing evidence that no reasonable juror would have convicted her in light of the evidence, new and old, as a whole, she is not entitled to habeas relief on actual innocence grounds. Issue Five is overruled.

### CONCLUSION

Gonzalez has not put forth any meritorious grounds for habeas corpus relief. The judgment of the trial court is affirmed.


August 10, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

12