

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-79,040-02

### EX PARTE ALESHA DEAN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. W09-40844-J(B) IN CRIMINAL DISTRICT COURT NO. 3
### DALLAS COUNTY

ALCALA, J., announced the judgment of the Court and delivered an opinion in which MEYERS, JOHNSON, and RICHARDSON, JJ., joined. YEARY, J., filed a concurring opinion. KEASLER, J., filed a dissenting opinion in which HERVEY and NEWELL, JJ., joined. KELLER, P.J., concurred in the judgment.

### O P I N I O N

Alesha Dean, applicant, contends in her application for a post-conviction writ of habeas corpus that her plea of guilty was rendered involuntary due to ineffective assistance of counsel. In particular, applicant alleges that her attorney performed deficiently by advising her that the offense to which she pleaded guilty, first-degree injury to a child by omission, was not classified as an "aggravated" offense for purposes of determining her parole eligibility and, thus, that she would not have to serve one-half of the calendar time of

her sentence before she would become eligible for parole. Applicant further contends that, but for counsel's incorrect advice regarding this matter, she would not have pleaded guilty. The habeas court has made findings of fact and conclusions of law recommending that this Court grant relief. Although the basis for our conclusion is different from the one relied upon by the habeas court, we agree with the habeas court's ultimate determination that applicant is entitled to relief. We conclude that the record establishes that applicant's attorney misadvised her regarding her statutory parole eligibility and that, but for counsel's misadvice, applicant would not have pleaded guilty. Furthermore, because the record reveals that the matter of applicant's parole eligibility rose to the level of an element of the plea bargain, we conclude that applicant is entitled to relief under this Court's longstanding precedent that permits the granting of relief under these circumstances. We explain each of these conclusions in turn below.

## I. Factual Background

In 2009, applicant was indicted for first-degree injury to a child by omission. In 2011, pursuant to a plea bargain with the State, applicant entered a plea of guilty to the offense, and the trial court sentenced her to twenty-five years' imprisonment. Applicant did not appeal her conviction or sentence.

Applicant contends that, at the time that she pleaded guilty to the offense, she was advised by her trial attorney that the offense would not be classified as a "3g," or aggravated, offense. *See* TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(1)(I). Advice that her offense was

not classified as a 3g or aggravated offense would be incorrect because, pursuant to Article 42.12, first-degree injury to a child by omission is classified as an aggravated offense. *See id.* The classification of the offense as aggravated is important because it dictates that applicant will be required to serve one-half of her sentence before she can be considered for parole. *See* TEX. GOV'T CODE § 508.145(d)(1). Section 508.145(d) of the Government Code provides that a person convicted of first-degree injury to a child "is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years." *Id.* For offenses not classified as aggravated, aside from several other exceptions not relevant here, the Government Code provides that an inmate is eligible for release on parole "when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less." *Id*. § 508.145(f). Thus, here, advice that applicant would not have to serve aggravated time would be incorrect under the statutory provisions that require her to serve half of her sentence, or twelve-and-a-half years, without consideration of good-conduct time, before she may be considered for parole. *See id.* § 508.145(d)(1), (f).

In 2013, applicant filed an application for a post-conviction writ of habeas corpus in which she challenged the voluntariness of her guilty plea based on counsel's misadvice

regarding her statutory parole eligibility.[1] After the habeas court forwarded the application, this Court remanded the case for further factual development. The habeas court held a live evidentiary hearing on applicant's claim at which applicant's trial attorney, applicant, and two of applicant's family members testified.

At the hearing, trial counsel testified inconsistently with respect to whether he had advised applicant that the offense was an aggravated offense, but he ultimately acknowledged that, during the actual plea proceedings, he represented to the trial-court judge and to applicant that the offense was not an aggravated offense. On the one hand, applicant's trial attorney claimed that he told applicant "not to count on getting out early." He contends that he told her that the "statute required her to serve one-half of any sentence she received." On the other hand, trial counsel also told applicant that he believed that her offense should not be classified as an aggravated, or "3g," offense because the offense was based on an omission rather than an overt act and there was no deadly-weapon finding. Under that theory, counsel told applicant that, if the statute was interpreted "correctly" in his opinion, then "she could be out sooner" than the mandatory aggravated time. In any event, counsel

---

[1] We note that, prior to the instant application, applicant filed another application in which she contended that her offense had been "misclassified for purposes of parole eligibility." Applicant was represented in that prior writ proceeding by the same attorney who had represented her in the plea proceedings. That prior application was denied by this Court in February 2013. Although the present application is technically applicant's second writ application, because the prior application did not challenge applicant's conviction or her sentence but merely alleged that she was improperly being subjected to aggravated time, the present application does not constitute a subsequent writ under Article 11.07, and thus it is properly considered on its merits. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4.

acknowledged that, at applicant's plea hearing, the trial court had asked him if this was a "3g" offense, and counsel responded, "It is not, Your Honor."

Applicant and two of her family members also testified at the habeas hearing. Applicant stated in her testimony that she had discussed the matter of her parole eligibility with trial counsel several times and, on each occasion, he told her that she would be "eligible [for parole] between two and four years after starting my time because it would include my back time and everything I already served in the County." She further stated that trial counsel told her that this was not an aggravated offense, that she relied on counsel's advice in deciding whether to plead guilty, and that, but for counsel's erroneous advice, she would not have pleaded guilty and would have pursued a trial. Applicant's testimony as to these matters was echoed by the testimony of her half-sister and father, both of whom indicated that they had been present during meetings between counsel and applicant, and both of whom testified that counsel had told applicant that she would become eligible for parole in around two to four years.

In its findings of fact and conclusions of law, the habeas court found that injury to a child by omission is a "3g" offense, that trial counsel's testimony was "contradictory" as to whether he was aware of this fact and what advice he gave applicant, and that applicant's testimony was credible. With particular respect to the contradictory testimony of counsel, the habeas court observed that, although counsel claimed that he was aware at the time of applicant's guilty plea that the offense would be classified as aggravated and advised

applicant accordingly, he also filed a post-conviction writ application on applicant's behalf after that point claiming that the offense was a non-aggravated felony and had been "misclassified" for purposes of determining applicant's parole eligibility. The habeas court additionally took note of counsel's testimony at the hearing admitting that he had been "surprised" to learn that applicant's offense was being treated as an aggravated felony. With respect to this testimony, the habeas court stated, "It makes no sense that [applicant's counsel] was surprised that the Texas Department of Criminal Justice correctly followed the law." The habeas court further found conflicting counsel's assertions that he had told applicant that she should not expect to get out "one minute sooner than her entire sentence," but also represented that he had told applicant that, if the statute was interpreted correctly in his view, then she could "get out on parole much sooner."

In accordance with its fact findings, the habeas court concluded that applicant was entitled to relief. As the basis for its recommendation, it relied upon this Court's decision in *Ex parte Moussazadeh*, in which this Court held that trial counsel's misinformation to a defendant regarding his or her parole eligibility constituted deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). *See* 361 S.W.3d 684, 690-91 (Tex. Crim. App. 2012) ("*Moussazadeh III*"). The habeas court determined that counsel's performance was deficient, noting that, here, "counsel's misadvice more than tripled the length of time Applicant would have to serve before becoming parole eligible." Further, given its determination that applicant was credible in stating that, but for counsel's misadvice, she

would have rejected the plea offer and taken her case to trial, the habeas court concluded that applicant had adequately demonstrated that she was prejudiced as a result of counsel's error. The habeas court recommended that this Court grant relief.

After remand, this Court filed and set applicant's case to determine whether applicant should be granted relief from her guilty plea on the basis of counsel's misadvice regarding her statutory parole eligibility.

## II. Analysis

We determine that the habeas court's factual findings are supported by the record and we will defer to them. *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). Thus, our analysis is limited to determining whether, accepting those facts as true, applicant is entitled to relief under these circumstances. Although we agree with the habeas court's recommendation that relief be granted, we, unlike the habeas court, do not reach that conclusion based on this Court's decision in *Moussazadeh III*, which arguably does not apply to applicant's case because it was decided after her conviction became final and, thus, applying it here might constitute an improper retroactive application of the law. *See Moussazadeh III,* 361 S.W.3d at 691-92. Instead, we conclude that applicant is entitled to habeas relief by applying the longstanding pertinent rule in *Ex parte Young*, as modified by *Ex parte Evans*, that permits habeas relief for an involuntary plea based on evidence that a defendant was grossly misinformed about her parole eligibility date, that the misinformation significantly influenced her in her decision to plead guilty to the offense, and that the

misinformation rose to the level of an element of the plea bargain. *See Ex parte Young,* 644 S.W.2d 3, 5 (Tex. Crim. App. 1983); *Ex parte Evans*, 690 S.W.2d 274, 279 (Tex. Crim. App. 1985). Thus, because we assume without deciding that *Moussazadeh III* does not apply retroactively to applicant's case, we apply *Young* and *Evans* as the law in effect at the time of applicant's guilty plea, and we conclude that applicant is entitled to habeas relief under the rule of those cases. *See Moussazadeh III,* 361 S.W.3d at 690-91; *Evans*, 690 S.W.2d at 279; *Young*, 644 S.W.2d at 5.

This Court has long recognized that incorrect advice from counsel regarding a defendant's parole eligibility can render a guilty plea involuntary. More than thirty years ago in *Young*, this Court held that, "if [a] defendant is grossly misinformed about his parole eligibility date by his attorney, and the defendant relies upon that misinformation to the extent that it induces him to plead guilty or nolo contendere, his plea may be rendered involuntary." *Young*, 644 S.W.2d at 5. In *Young*, the defendant was charged with two counts of aggravated robbery, and he agreed to a plea bargain with the State by which he received two concurrent fifteen-year sentences. *Id.* at 3. Prior to pleading guilty, Young's attorney told him that he would be required to serve three years before he would become eligible for parole, when in fact it would be five years. *Id.* at 3-4. In particular, Young's attorney erroneously advised him that, so long as the judgment did not contain an affirmative deadly-weapon finding, Young would be eligible for "early parole." *Id.* at 4. In granting relief on Young's claim that his plea was rendered involuntary as a result of counsel's misadvice, this

Court explained that, "[a]lthough it is only natural for an individual pleading guilty to a felony to be concerned over his future parole date, where the plea is based upon a promise, such promise may render the plea of guilty involuntary." *Id.* at 5. With respect to the particular facts in *Young*, this Court further observed that, "[b]y implication, from the record, the trial court [judge] also labored under this misunderstanding of the law in that he followed the plea bargain to *not* enter an affirmative finding that a deadly weapon was used." *Id*. at 4. Given these facts, the Court held that Young had met his burden of "convincingly demonstrating that the misinformation significantly influenced him in deciding to plead guilty," and it granted relief. *Id.* at 5.

Shortly after *Young* was decided, this Court modified the rule of that case in *Ex parte Evans* by clarifying that, in order to obtain relief from a guilty plea on the basis of counsel's misadvice regarding parole eligibility, a defendant must additionally show that the matter of parole eligibility rose to the level of an element of the plea bargain. *See* 690 S.W.2d at 279. In *Evans*, this Court considered a situation in which Evans's attorney had misadvised him that his good-conduct time would be taken into consideration in calculating his parole-eligibility date. *Id.* at 275. In rejecting the habeas court's recommendation that Evans be granted relief, this Court observed that "[n]o overt sanctioning of this advice by the judge or the prosecutor appears in the record and it does not appear to have been a part of the plea bargain." *Id.* at 277. This Court further explained that, "without some further indication from the record evidencing" the status of parole eligibility as an element of the plea bargain,

it would not permit relief under these circumstances "simply because [a defendant's] attorney relayed erroneous parole eligibility advice upon which [a defendant] relied, at least in part, in pleading guilty." *Id.* at 277-78. It continued, "If [a defendant's] understanding of his parole eligibility is manifested as an affirmative part of the plea bargain and that understanding is relied on as an essential part of the quid pro quo for pleading guilty, then [his] plea is involuntary if that part of the plea bargain is not or cannot be carried out. This is so because of a defect in the plea bargain, however, not because of [the defendant's] misunderstanding per se." *Id.* at 279. The rationale underlying this Court's holding in *Evans* was that matters regarding parole eligibility and attainment were too speculative to form the basis for an involuntary-plea claim, absent some indication that the defendant's misunderstanding of his parole eligibility was an affirmative part of the plea bargain, which would render the situation a "broken or impossible plea bargain." *Id.*

In seeking to harmonize its reasoning in *Evans* with its holding in *Young*, the *Evans* Court explained that, in *Young*, a key component of its analysis was its observation that the trial court had "also labored under [a] misunderstanding of the law," as was implicitly shown by the trial court's actions in that case indicating its understanding that Young would not be required to serve aggravated time. *See id.* (citing *Young*, 644 S.W.2d at 4). This fact, the *Evans* Court explained, signified that Young's "understanding of parole eligibility was . . . elevated to the status of an element of the plea bargain," and, "since this element was not kept," the plea was rendered involuntary. *Id.* In sum, as a result of this Court's reasoning in

*Evans*, the initial rule of *Young* remained intact, but with a modification: In order to be entitled to relief on the basis of an involuntary plea under these circumstances, the defendant would be required to show not only that he was grossly misadvised as to his parole eligibility and that he was induced to plead guilty as a result of that misadvice, but he would also be required to point to some affirmative evidence in the record showing that his misunderstanding was elevated to the status of an element of the plea bargain. *See id.*[2]

Here, applicant's evidence is adequate to satisfy the *Young* standard as it was modified in *Evans,* and it is this law upon which we rely in determining that applicant is entitled to relief. The record supports the habeas court's finding that trial counsel misadvised applicant that she would be eligible for parole in no more than four years, when in fact she would not become eligible for parole for more than twelve years. The record further supports the habeas court's determination that applicant was credible in indicating that, but for counsel's erroneous advice, she would not have entered into the plea bargain, and, thus, she has adequately demonstrated that she relied upon counsel's erroneous advice to such a degree that it induced her to plead guilty. Applicant's evidence, therefore, meets the requirements for proving an involuntary-plea claim as set forth in *Young*. *See Young,* 644 S.W.2d at 4.

In addition, applicant's evidence is adequate to meet the requirement imposed by

---

[2]    *See also Ex parte Hughling*, 706 S.W.2d 662, 663 (Tex. Crim. App. 1986) (applying rule of *Young/Evans* and denying relief on involuntary-plea claim because, even assuming that counsel had misadvised Hughling regarding his statutory parole eligibility, this Court's "review of the actual guilty plea hearing shows that neither the prosecutor nor the trial judge made any references or promises concerning [Hughling's] parole eligibility," and thus parole-eligibility information "was not an element of the plea bargain entered into by applicant").

*Evans* that the record somehow show that the misunderstanding regarding her parole eligibility constituted a part of the plea bargain. *See Evans*, 690 S.W.2d at 279. Here, the record shows that, during applicant's plea colloquy, the trial-court judge asked trial counsel, "Is this a 3g offense?" Counsel replied, "It is not, Your Honor." The trial court responded, "Okay. Alright." Applicant's attorney, applicant, and the trial court, therefore, all agreed to the plea bargain while under the mistaken impression that applicant's sentence would be served with non-aggravated prison time. By accepting counsel's assertion as true, the trial court effectively sanctioned counsel's incorrect advice regarding this matter that was critical to applicant's decision to plead guilty. In this sense, the instant facts are similar to those in *Young*, in which the record implicitly showed that the trial court had "also labored under [a] misunderstanding of the law" regarding the deadly-weapon finding. *See Young*, 644 S.W.2d at 4. Given this similarity, we conclude that applicant's evidence satisfies the additional requirement that there be some manifestation in the record to show that the issue of her parole eligibility was elevated to the status of an element of the plea bargain. *See id.*; *see also Evans*, 690 S.W.2d at 279.

Because the habeas court analyzed applicant's claim under this Court's more recent precedent in *Moussazadeh III*, we will briefly address this Court's holding in that case.[3] *See*

---

[3]     We note here that the habeas court's application of *Moussazadeh III* as the relevant legal standard is understandable, given that this Court cited that case in its order remanding this case to the habeas court for findings of fact and conclusions of law. *See Ex parte Dean*, No. WR-79,040-02 (Tex. Crim. App. July 1, 2015). It appears that, as of the time that this case was remanded to the habeas court, this Court had not yet considered that applicant might be entitled to relief under this Court's precedent in *Young* and *Evans* that predated its opinion in *Moussazadeh III*, and thus the

*Moussazadeh III*, 361 S.W.3d at 691-92. In 2012, this Court, on its own initiative, reopened the prior writ application that had been filed by Moussazadeh, in which he had claimed that his plea was involuntary due to his attorney's erroneous advice regarding his statutory parole eligibility. In its initial opinion disposing of Moussazadeh's claim in 2001, this Court had denied relief based on its determination that the record in that case failed to satisfy the requirements of *Evans*. *See Ex parte Moussazadeh*, 64 S.W.3d 404, 411-13 (Tex. Crim. App. 2001) (*Moussazadeh II*) (rejecting Moussazadeh's involuntary-plea claim because he failed to prove that his plea was "induced by a misunderstanding of the applicable parole law which formed an essential element of the plea agreement"). In reconsidering its treatment of Moussazadeh's claim in *Moussazadeh III*, this Court concluded that its analysis in *Moussazadeh II* had been incorrect, and it vacated its prior judgment and granted relief. *Id.* at 692. In the course of reaching its conclusion in *Moussazadeh III*, this Court modified the rule that governs the granting of relief under these circumstances by holding that a defendant could show that his plea was involuntary by demonstrating that counsel misadvised him regarding matters of statutory parole eligibility and that, but for that misadvice, he would not have pleaded guilty. *Id.* at 690-91. In other words, this Court removed the additional requirement imposed by *Evans* that a defendant show that the parole-eligibility misinformation constituted an element of the plea bargain. *See id.* at 689. The reasoning underlying this Court's holding in *Moussazadeh III* was its recognition that the approach in

focus of the remand order was whether applicant was entitled to relief under our more recent precedent in *Moussazadeh III*.

*Evans* had been based on flawed reasoning that had conflated matters of parole attainment, which are necessarily speculative, with matters of parole eligibility, which are concrete and certain as of the time of a defendant's guilty plea. *See id.* at 690 (explaining that, unlike matters of parole attainment, "the question of parole eligibility . . . elicits a straightforward answer because an applicant's parole eligibility is determined by the law in effect on the date of the offense"). Given this recognition, this Court in *Moussazadeh III* concluded that relief would be warranted under these circumstances if the defendant could satisfy the ordinary *Strickland* standard that requires a showing of deficient performance and prejudice, without requiring him to additionally show that the misunderstanding as to his parole eligibility constituted an essential part of the plea agreement. *Id.* at 691.

Based on this Court's holding in *Moussazadeh III* that expanded the availability of relief for involuntary-plea claims based on counsel's erroneous parole-eligibility advice, it appears that applicant would be entitled to relief under the rule of that case if it were held to apply to her situation. But, because *Moussazadeh III* was decided after applicant's conviction became final in 2011, it is unclear whether applicant may avail herself of the more favorable legal standard set forth in that case. In concluding that applicant was entitled to relief under *Moussazadeh III*, the instant habeas court did not consider whether that decision could be applied retroactively to applicant's case. We note here that the question of whether *Moussazadeh III* could be applied to applicant's case is a difficult one. On the one hand, to the extent that the rule in *Moussazadeh III* would be construed as a new rule of constitutional

law, this Court's retroactivity doctrine would appear to preclude the application of that rule to applicant's case, unless the rule could meet one of several limited exceptions. *See Ex parte De Los Reyes,* 392 S.W.3d 675, 678 (Tex. Crim. App. 2013) (citing *Teague v. Lane*, 489 U.S. 288, 301 (1989)). On the other hand, it is not entirely clear that the rule set forth in *Moussazadeh III* would constitute a "new rule" as of the date of this Court's decision in 2012, given the unusual procedural posture of that case, which involved this Court reopening and granting relief on Moussazadeh's prior writ application from 2001, based largely on this Court's assessment that its prior reasoning in *Moussazadeh II* had been mistaken. In any event, we conclude that we need not address these difficult questions in order to resolve applicant's case because, as we have explained above, the record shows that applicant is entitled to relief under this Court's precedent that existed prior to its decision in *Moussazadeh III.* We accordingly determine that it is unnecessary to decide whether or how *Moussazadeh III* applies to this case.

### III. Conclusion

We conclude that this record adequately demonstrates that applicant's trial attorney misadvised her about the applicable statutory parole law and that, but for that erroneous advice, she would not have pleaded guilty. Because the record further reveals that counsel's misadvice was overtly sanctioned by the trial court during the plea hearing and thus the matter of applicant's parole eligibility rose to the level of an element of the plea bargain, we hold that applicant is entitled to relief under the law in *Young* and *Evans* that preceded

*Moussazadeh III*.  In accordance with the habeas court's recommendation to grant relief on the basis of ineffective assistance of counsel, we grant habeas relief to applicant.  The judgment in this cause is vacated, and applicant is remanded to the custody of the Dallas County Sheriff to answer the charges set out in the indictment. The trial court shall issue any necessary bench warrant within ten days after the mandate of this Court issues.  Copies of this opinion shall be sent to the Texas Department of Criminal Justice–Correctional Institutions Division and Pardons and Paroles Division.

Delivered: November 23, 2016

Do Not Publish