**EX PARTE Carlos Alberto SALAZAR, Applicant**

**NO. WR–85,350–01**

Court of Criminal Appeals of Texas.

Filed: December 14, 2016

Gary Michael Polland, Polland & Associates PC, Houston, for Applicant.

Andrew J. Smith, Assistant District Attorney, Harris County, Houston, Stacey Soule, State's Attorney, Austin, for the State.

## DISSENTING OPINION

Alcala, J., filed a dissenting opinion in which Johnson, J., joined.

Applicant Carlos Alberto Salazar was brought to the United States as a child, married a citizen of this country, has children who are also citizens, and he contends that he would not have pleaded guilty to an offense had he not been misadvised by his attorney about immigration consequences that may lead to his deportation from this country. Because this Court dismisses his application without explanation, I respectfully dissent. I conclude that applicant may be entitled to post-conviction relief on the basis of ineffective assistance of counsel under the theory that his attorney's misinformation about a material matter substantially affected his decision to plead guilty to an offense. I would file and set this application to determine whether applicant should be granted relief.

## I. Background

Applicant's affidavit explains that he was brought to the United States at the age of four by his mother on a visitor's visa. After his father killed his mother, applicant was moved to different residences by various family members. At age sixteen, applicant met his wife, a United States Citizen, and they married. Their two children are citizens of this country.

In 2007, applicant pleaded guilty to a charge of possession of cocaine in an amount less than one gram. Applicant's application contends that, at the time of his guilty plea, his trial attorney told him that the admonition in the plea papers about immigration consequences "was to be ignored" and that "there would not be any adverse immigration consequences" to him as a result of his conviction. Applicant avers that, had he been properly advised about immigration consequences, he would not have pleaded guilty to the charge and would have instead gone to trial.

Based on the application and the State's response, and in the absence of a hearing, the trial court recommended that this Court deny relief. The trial court made findings of fact that (1) in 2007, applicant pleaded guilty and was sentenced to sixty days in the county jail for the felony offense of possession of cocaine, (2) applicant did not appeal that conviction, (3) applicant filed the instant habeas application in 2016, (4) the nine-year delay in filing the instant application has affected applicant's credibility, (5) the affidavit of Raed Gonzalez, an immigration attorney, indicating that applicant is inadmissible and deportable as a result of this conviction, was unpersuasive, and (6) applicant has failed to show that he would not have pleaded guilty and would have insisted on going to trial had he been informed of the immigration consequences that would certainly be imposed rather than the immigration consequences that might possibly be imposed.

## II. Proof of Restraint

Applicant has demonstrated that he may be entitled to post-conviction habeas relief because he is under restraint from his conviction due to collateral consequences. Before a habeas court may consider a habeas application, an applicant must show that he is "confined," which ordinarily means that he is confined in jail or prison. *See* Tex. Code Crim. Proc. art. 11.07, § 3(c). But confinement can also mean, as here, that an applicant is suffering from collater-

al consequences from his conviction. *See id.* ("Confinement means confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus."). To the extent that this Court dismisses this application on the basis that applicant has failed to show that he is suffering collateral consequences from his conviction, I disagree. *See Ex parte Harrington,* 310 S.W.3d 452, 457 (Tex. Crim. App. 2010) (explaining that "a showing of a collateral consequence, without more, is now sufficient to establish 'confinement' so as to trigger application of art. 11.07. That an applicant is not in the actual physical custody of the government at the time of the filing does not preclude his application nor deprive the trial court of jurisdiction to consider it.").

I conclude that applicant has complied with this pleading requirement. He has adequately alleged collateral consequences in that he has averred that "[t]he only ongoing legal issue that I have had is difficulty resolving my immigration status due to" this case. Applicant's inability to resolve his immigration status is an adequate basis for establishing collateral consequences. In *Harrington,* this Court held that Harrington had adequately alleged collateral consequences where, as a result of his felony conviction, he showed that he would suffer "adverse consequences to [his] present and future employment opportunities." *Id.* at 457–58. Surely applicant's assertion that his conviction is adversely affecting his ability to resolve his immigration status is no more uncertain or speculative than the assertion in *Harrington* of reduced employment prospects as a result of a felony conviction. Furthermore, although applicant indicates in his affidavit that at some prior time he had had problems with resolving his immigration status due to "a small criminal mischief charge," he explains that his recent immigration

problems are due to this possession-of-cocaine conviction. Because applicant has shown that the cocaine-possession charge in particular is affecting his immigration status, that is adequate to establish that he is suffering from collateral consequences from this conviction, and dismissal of this application on that basis would be improper.

## III. The Habeas Court's Reliance on *Padilla v. Kentucky* Was Mistaken

In recommending that applicant's habeas application be denied, the habeas court appeared to use the standard in the Supreme Court's decision in *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). Because it focused on the facts as they would pertain to relief under *Padilla,* the habeas court mistakenly reached an incorrect conclusion to recommend that relief be denied. The habeas court determined that applicant has failed to show that he would not have pleaded guilty and would have insisted on going to trial had he been informed of the immigration consequences that would certainly be imposed rather than the immigration consequences that might possibly be imposed, which was the issue addressed by the Supreme Court in *Padilla.* But that is not this applicant's primary complaint. He contends that the plea papers included an admonition about immigration consequences and that his attorney told him to ignore that admonition because "there would not be any adverse immigration consequences" to him. This case, therefore, involves a narrower issue than the broad questions that were addressed by the Supreme Court in *Padilla* because this case involves affirmative misadvice from counsel about immigration consequences that were expressly referenced in the plea papers.

The habeas court also found the affidavit of the immigration attorney to lack credibility, but that finding is also immaterial because the plea papers that were prepared in this case admonished applicant that he could be deported for this offense. The issue here is whether trial counsel was ineffective by telling applicant to ignore that admonishment because there would be no immigration consequences from the conviction.

The habeas court erred by relying on *Padilla* to make its recommendations in this case. Applicant's case was final before the Supreme Court decided *Padilla*, and it appears that *Padilla* would not retroactively apply to him. *See* 559 U.S. at 368, 130 S.Ct. 1473; *see also Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013). Furthermore, *Padilla* addressed broader concerns in addressing counsel's obligation to always advise his client about a risk of deportation and, when the deportation consequence of a guilty plea is truly clear, counsel must advise his client of that fact. *Padilla*, 559 U.S. at 368–69, 130 S.Ct. 1473. Here, by contrast, the facts involve active misinformation from counsel about any possible deportation consequences or the loss of lawful immigration status.

## IV. Relief May Be Appropriate Under This Court's Longstanding Precedent

Because he has shown that he was misadvised about an issue that was crucial to his decision to plead guilty, which had been a basis for granting relief under this Court's precedent long before *Padilla* was decided, applicant may be entitled to relief. *See Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999) (holding that plea was rendered involuntary as a result of ineffective assistance of counsel due to counsel's misadvice to defendant that he would be transferred to federal custody upon pleading guilty to state offense). Although *Padilla* raised the bar for what constitutes reasonably competent assistance in this context by providing that defense attorneys must affirmatively give correct advice to their clients regarding the certain deportation consequences of a guilty plea, that case did not alter the longstanding more general principle that an attorney renders deficient performance when he gives a defendant incorrect advice regarding a non-novel matter that is material to the defendant's decision to plead guilty. *Compare Padilla*, 559 U.S. at 369, 130 S.Ct. 1473, *with Moody*, 991 S.W.2d at 858–59. In this case, the subject of immigration consequences could not be reasonably categorized as a novel matter because the information about possible deportation as a result of this conviction was included in the plea papers that counsel was discussing with applicant, and counsel affirmatively told applicant to disregard that information. Thus, under this Court's established precedent, counsel's misadvice in this situation appears to be grounds for holding that he performed deficiently. *See Moody*, 991 S.W.2d at 858 (explaining that, in assessing competence, counsel is "accountable for knowledge, or the ability to attain knowledge, of relevant legal matters that are neither novel nor unsettled"). Here, given that counsel provided grossly inaccurate advice on a non-novel matter of law that induced applicant to plead guilty, it appears likely that applicant would not have pleaded guilty to this offense had he been properly advised not to disregard the trial court's admonishment about possible deportation and immigration consequences.

I further note here that this Court recently heard oral argument in a case presenting similar issues to the ones presented by this case. *See Ex parte Aguilar*, No. WR–82,014–01 (filed and set April 6, 2016;

submitted Oct. 5, 2016). In particular, one of the issues in *Aguilar* is whether, setting aside *Padilla*, a defendant's guilty plea will be rendered involuntary if counsel affirmatively misadvises a defendant about the immigration consequences of his guilty plea. Another issue in *Aguilar* asks whether a defendant has shown prejudice or harm based on the loss of an immigration protected status, when no deportation proceedings have been initiated against him. Additionally, there is a question in *Aguilar* as to whether the applicant in that case has shown that he is suffering collateral consequences from his conviction based on the loss of an immigration protected status, given that deportation has not yet commenced. These questions are all squarely at issue in the present case. Given the overlapping factual and legal issues in *Aguilar* and the present case, at a minimum, therefore, this Court should hold this case until *Aguilar* is resolved.

The habeas court held it against applicant that he did not complain about this conviction earlier and the court suggests that he has failed to show that he would have rejected the plea bargain and gone to trial. As the ultimate fact finder in this habeas case, I would not abide by the habeas court's findings as to these matters. Applicant has explained that the immigration consequences flowing from this conviction have occurred more recently, and thus, until now he would not have been able to show a restraint. Furthermore, given that the State reduced the punishment in this case to a mere sixty days in jail, that slight punishment suggests that its case must have been weak or of little importance to the State. Applicant, therefore, may have had a realistic chance at success at trial in achieving a dismissal or a lesser charge. Furthermore, because applicant's entire family consists of United States citizens, it seems highly unlikely that he would have pleaded guilty to the offense that would have placed him at risk of losing protected immigration status or would make him deportable. I would credit the assertions in the applicant's affidavit, hold that he has established both that his counsel misadvised him and that he was prejudiced by counsel's erroneous advice, and I would address the underlying legal question of whether a basis exists in the law for this Court to grant him relief on these facts.

## V. Conclusion

For all of the foregoing reasons, I disagree with this Court's dismissal of this application on the basis of applicant's failure to show collateral consequences, and I would file and set this case to determine whether applicant is entitled to relief under these circumstances. At the very least, these legal questions are not conducive to resolution by summary dismissal without a written order. Because the Court declines to address the substantive merits of this case and instead summarily dismisses the application, I respectfully dissent.