**Affirm and Opinion Filed June 16, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00027-CR**
_____

**EX PARTE: ANGEL GUADALUPE TORRES**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. WX19-90191-J**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Molberg

Angel Guadalupe Torres appeals an order denying his post-conviction application for writ of habeas corpus filed under article 11.072 of the code of criminal procedure.[1] Torres contends the court abused its discretion by denying him habeas relief based on the record as a whole. For the reasons that follow, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

---

[1] *See* TEX. CODE OF CRIM. PROC. art. 11.072. Article 11.072 was amended, in part, effective September 1, 2021, for applications for writ of habeas corpus filed on or after that date. Torres's application is governed by the prior law in effect on May 16, 2019, when he filed his application. *See* Act of June 18, 2021, 87th Leg., R.S., ch. 934, §§ 8.04, 19.01, 2021 Tex. Sess. Law Serv. 2379, 2396–97, 2407–08. Unless otherwise noted, all citations herein are to current law because, as to the portions of article 11.072 we cite herein, no difference exists between current law and the law in effect as of May 16, 2019.

## BACKGROUND

Torres was born in Mexico and entered the United States with his parents and brothers when he was nine years old. Torres testified he did so legally, on a visa, and overstayed the visa after it expired.

On September 26, 2001, Torres was charged by indictment with state-jail felony possession of a controlled substance—cocaine—in an amount by aggregate weight, including any adulterants or dilutants, of less than one gram.[2] The trial court appointed attorney George Barrera to represent Torres on the charge.

On January 14, 2002, eight years before *Padilla v. Kentucky* was decided,[3] Torres waived a jury and entered a negotiated plea of no contest to the charged offense while represented by Barrera. Per the terms of the plea bargain agreement, the trial court found Torres guilty of the offense, sentenced Torres to two years' confinement in state jail and a $1,500 fine, suspended that sentence, and placed Torres on community supervision for five years. Torres successfully completed the terms of his probation.

---

[2] *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (b) (possession of substance in penalty group 1 is state jail felony if amount of controlled substance is, by aggregate weight, including adulterants or dilutants, less than one gram); *id*. § 481.102(3)(D) (cocaine is included in penalty group 1).

[3] *Padilla v. Kentucky*, 559 U.S. 356 (2010) requires defense counsel to affirmatively advise his or her client about the immigration consequences of conviction but does not apply to pleas entered prior to March 31, 2010—the date the case was issued—as Torres's plea was. *See Chaidez v. U.S.*, 568 U.S. 342, 358 (2013) (concluding defendants whose convictions became final prior to *Padilla* cannot benefit from its holding); *Ex Parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013) (adhering to retroactivity analysis in *Chaidez* and its holding that *Padilla* does not apply retroactively).

Torres testified he later married a United States citizen and applied for and was denied citizenship because of his prior conviction.

On May 16, 2019, Torres hired new counsel and filed an application for habeas corpus relief under article 11.072. In his application, Torres challenged the legal validity of the conviction for which community supervision was imposed by claiming his plea was involuntary due to alleged ineffective assistance by Barrera, who Torres claimed provided him affirmative misadvice regarding the immigration-related consequences of his plea. Specifically, Torres claimed Barrera "erroneously assured [him and his mother] that pleading no contest would not hurt his immigration status since it was not an admission of guilt" and "further advised [them] that [Torres] would be able to fix his immigration status if [he] successfully completed the terms of his probation."

On June 11, 2019, the State filed an answer to Torres's application. The State denied Torres's allegations, asserted Torres's application was barred by laches, and stated more evidence was needed to determine what admonitions and advice Torres's trial counsel gave him regarding his plea.

The trial court heard Torres's application on September 20, 2019. Three witnesses testified: Torres, his mother, and an immigration attorney, Michael Zumberg.[4]

---

[4] Zumberg testified he is not licensed to practice law in Texas, but is in Michigan, and is able to practice immigration law anywhere in the country.

Barrera did not testify, but both parties' counsel represented to the court that they or their co-counsel had been in contact with Barrera, who had said he had no records or memory of the case.[5]

Torres testified he signed the plea agreement paperwork without reading it and met with Barrera only one time. He also testified Barrera told him he had talked to Torres's mother and assured Torres he would not have any problems with his legal status, a topic which, according to Barrera, Torres's mother was concerned. Torres's mother testified she asked Barrera if Torres was going to have problems with immigration, and Barrera told her no.

Zumberg, the immigration attorney, testified immigration law has not changed since 2001 as it relates to possession of cocaine and such a conviction "absolutely would have an immigration impact" both now and in 2001. He described these impacts in terms of both inadmissibility and removability[6] and stated a conviction would result in a person being "inadmissible for life," with no waiver, no form of forgiveness, and no exception; would make a person subject to mandatory detention and removal or deportation with no ability for an immigration judge to cancel it; and would leave a person, if deported, unable to come back to the country legally because "he would be subject to the lifetime ban of inadmissibility."

---

[5] Counsel also stated Barrera lived out of state and was out of subpoena range.

[6] Zumberg described inadmissibility as "the ability to exclude people at the border and also deny them immigration benefits" and "removability," which is also known as "deportability," as the ability to "remov[e] people against their will from the country who are already here."

When asked if it was true or not true that a plea of guilt or no contest "is almost certain to cause an immigration consequence" as stated in the admonitions in the plea paperwork, Zumberg answered, "[i]t would not be true [as he] would interpret that to mean . . . there would be ambiguity [and] not a certainty."

Prior to this testimony, Torres's counsel specifically told the court he was "not impugning the Court's admonitions."

The court announced its ruling from the bench at the conclusion of the hearing, noting, as it did so, concerns about Torres's credibility. The court stated, in part:

> Okay. The Court's ready to rule. Have your client stand.
>
> The Court makes a finding that on January the 14th, 2002, the defendant pled no contest to the offense of possession of a controlled substance, less than a gram. He was sentenced to two years over five probation, and he successfully completed that probation. In those plea papers, as stated in State's Exhibit No. 2, it clearly states that the defendant's plea of guilty or nolo contendere could possibly result in his deportation or immigration consequences. I think specifically -- yeah, would probably result in deportation from the United States, exclusion from admission to the United States or denial of naturalization under federal law.
>
> The Court listened to the testimony that was presented by the defendant. The defendant couldn't remember how many times he'd talked to his attorney. He said once that he'd only talked to his attorney one time but, clearly, the paperwork in the case file indicates otherwise, that he would have talked to his attorney more than one time, at least three times.
>
> There [were] some concerns that the Court had about the fact that the defendant couldn't remember anything else except what benefited him. There was no – I don't remember that, I don't remember being told that I had a right to a jury trial, I don't remember being told anything at all, except I wasn't told that I would have some immigration consequences, even though clearly the paperwork seems to indicate otherwise.
>
> . . . .

I applaud that he's successfully completed probation. Unfortunately, we have defendants every day who[se] attorneys tell them something, they read their plea papers, the judge tells them something, and they still don't get it. And I believe he did not get it, but I don't believe that you have shown me that the attorney did not say it.

You're saying that your client did not get it, and he was 18 years old, and he may have been scared; but I don't think that you have met the burden of showing me that the attorney was ineffective. And that is what is required in order for him to be able to have this writ granted; and I just don't think you-all have gotten there. So the Court's going to deny your writ.

I don't believe that there is evidence that this attorney was ineffective, other than the defendant's self-serving testimony; self-serving to the extent that he doesn't remember anything that the attorney told him except that he didn't tell him that he would have immigration consequences. I find that hard to believe.

So for that reason, the Court's going to deny your writ.

No written order was entered on the day of the hearing. Torres requested findings of fact and conclusions of law a week after the hearing and later filed a notice of past due findings.

On April 1, 2020, the trial court signed the order Torres now appeals—a document entitled "State's Proposed Findings of Fact and Conclusions of Law and Order."[7] In it, the court denied Torres relief and listed several findings of fact and conclusions of law, including, but not limited to, the following:

---

[7] The order was untimely. *See* TEX. CODE OF CRIM. PROC. art. 11.072 § 6a ("Not later than the 60th day after the day on which the state's answer is filed, the trial court shall enter a written order granting or denying the relief sought in the application."). However, this does not impact the appeal, as the trial court's ruling moots any timing issue. *See State v. Morin*, No. 13-05-00181-CR, 2006 WL 2382760, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2006, no pet.) (mem. op., not designated for publication) (noting proper remedy to delay in ruling on article 11.072 application is a petition for writ of mandamus in the court of appeals and stating compliance with statutory deadlines becomes moot once trial court rules); *In re*

The Court FINDS the following:

. . . .

7. Applicant signed a written plea agreement acknowledging that his attorney had explained to him and that he had read the admonitions and warnings regarding his rights and his plea and that his waivers were freely and voluntarily made with full understanding of the consequences.

8. Applicant signed a written plea agreement in which the defendant acknowledged that he "understand[s] the nature of the accusation made against me, the range of punishment for such offense, and the consequences of a plea of guilty or nolo contendere."

9. Included in the written plea agreement were admonitions to Applicant that if he was "not a citizen of the United States, a plea of guilty or nolo contendere may, and under current Federal Immigration rules is almost certain to, result in your deportation, exclusion from admission to the United States, or denial of naturalization."

10. Applicant acknowledged that if he was "not a United States citizen, a plea of guilty or nolo contendere will probably result in my deportation from the United States, exclusion from admission to the United States, or denial of naturalization under Federal law."

11. The pass slips in the case reflect that Applicant appeared with Attorney Barrera at least three times.

12. Applicant's representations and testimony, including, but not limited to his representations that he only met once with Attorney Barrera and that Attorney Barrera provided him with affirmative misadvice, are not credible.

13. Attorney Barrera did not provide Applicant with affirmative misadvice regarding the immigration consequences of his plea.

14. Applicant did understand the nature of the charged offense.

---

*Ramires*, No. 12-21-00151-CR, 2021 WL 5830046, at *1–3 (Tex. App.—Tyler Dec. 8, 2021, orig. proceeding) (mem. op., not designated for publication) (untimely article 11.072 order does not deprive trial court of jurisdiction and does not require reversal on appeal of an order denying the application).

15. Applicant was sufficiently aware of his constitutional rights to allow him to voluntarily enter his plea. ·

The Court MAKES the following CONCLUSIONS OF LAW:

16. Applicant has failed to meet his burden to show that his trial counsel's conduct was deficient, and the Court concludes that Attorney Barrera's conduct was not deficient.

17. Applicant['s] plea was not involuntary.

Relief is DENIED.

## DISCUSSION

We initially dismissed this appeal after concluding we lacked jurisdiction but later granted Torres's motion for rehearing, vacated our prior opinion and judgment, and reinstated the appeal after concluding the trial court had entered a final ruling on his application and Torres had filed a valid, but premature, notice of appeal that was lost without fault by him, which triggered our jurisdiction.

On appeal, Torres argues the trial court abused its discretion by denying his application considering the record as a whole, which he notes includes uncontroverted testimony regarding the lifetime ban of inadmissibility and includes text in the plea agreement that states a plea of guilty or no contest was "almost certain to cause an immigration consequence."

*Review in Ineffective Assistance Claims*

Because Torres's article 11.072 application claims his plea was involuntary due to Barrera's alleged ineffective assistance, we begin by outlining the applicable standards we apply when considering claims of ineffective assistance of counsel. A

defendant is entitled to reasonably effective assistance of counsel under the Sixth Amendment to the United States Constitution and under section 10 of article I of the Texas Constitution.   U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

"To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him." *Andrus v. Tex.*, 140 S.Ct. 1875, 1881 (2020) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (appellant must prove by a preponderance of the evidence counsel was ineffective) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

In determining whether or not counsel's representation was deficient, we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689; *see also Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).   To defeat the presumption of reasonable representation, an allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness.  *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).   A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance.

*Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 814.

To show prejudice under the second prong of *Strickland*, an appellant must demonstrate a reasonable probability the outcome would have differed but for trial counsel's errors. *Strickland*, 466 U.S. at 694; *see also Jackson*, 877 S.W.2d at 771. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Jackson*, 877 S.W.2d at 771 (quoting *Strickland*, 466 U.S. at 694). It is not sufficient to show defense counsel's errors "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, to establish prejudice, an appellant must show counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result was reliable." *Id.* at 687.

Failure to satisfy either prong of the *Strickland* standard is fatal. *Perez*, 310 S.W.3d at 893; *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006); *Rylander*, 101 S.W.3d at 110. Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

In rare cases, an appellant claiming ineffective assistance of counsel is not required to show prejudice; rather, prejudice is presumed and the appellant only is required to show deficient performance." *Id*. (citing *United States v. Cronic*, 466 U.S. 648, 658–60 (1984) and *Florida v. Nixon*, 543 U.S. 175, 190 (2004)). *Cronic* identified three situations that were so likely to prejudice the accused as to justify a presumption of prejudice, including:

(1) the accused was denied the presence of counsel at a critical stage of trial, (2) counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, or (3) circumstances at trial were such that, although counsel was available to assist the defendant during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Cronic*, 466 U.S. at 659–60). None of the *Cronic* factors are argued here.

*Review in Article 11.072 Habeas Proceedings*

Applicants for post-conviction habeas corpus relief bear the burden of proving their claims by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). When the underlying conviction results in community supervision, an ensuing post-conviction writ must be brought pursuant to article 11.072 of the code of criminal procedure. *Id.* at 42.

In reviewing an appeal arising from an 11.072 writ application, the trial court is the sole finder of fact. *Ex parte Sanchez*, 625 S.W.3d 139, 140 (Tex. Crim. App. 2021); *Torres*, 483 S.W.3d at 42. Appellate courts have less leeway to disregard the trial court's factual findings, and we "afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor." *Torres*, 483 S.W.3d at 42–43. We defer to the trial court's fact findings supported by the record even when such findings are based on affidavits rather than live testimony. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). If, however, the trial court's determinations are questions of law, or mixed questions of law and fact that do not

–11–

turn on an evaluation of witnesses' credibility and demeanor, then we review them de novo. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

In reviewing the trial court's ruling on a habeas claim, we review the record evidence in the light most favorable to the trial court's ruling and must uphold the trial court's ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).

*Application and Analysis*

As indicated, Torres claimed in his article 11.072 application that his plea was involuntary due to Barrera's alleged ineffective assistance, and argues, on appeal, that the trial court abused its discretion by denying his application because of the record as a whole, considering the uncontroverted testimony regarding the lifetime ban of inadmissibility and the plea agreement's text stating that a plea of guilt or no contest was "almost certain to cause an immigration consequence." As support for his position, Torres cites *Ex parte Osvaldo*, 534 S.W.3d 607, 616–22 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd*, *Ex Parte Garcia*, 547 S.W.3d 228 (Tex. Crim. App. 2018), but that case is distinguishable.[8]

---

[8] Some of the evidence presented in *Garcia* regarding counsel's alleged ineffectiveness is similar to the testimony Torres provided. *See Osvaldo*, 534 S.W.3d at 611 (noting that Garcia testified his counsel told him he "should be okay, be fine" regarding his immigration status and that his translator testified counsel answered "yes" when Garcia asked his counsel if he "was going to be ok with his deportation and his green card"). Importantly, however, the habeas court in *Garcia* entered findings evidencing that the court

–12–

The State makes two primary arguments in disputing Torres's appeal. First, the State argues Torres failed to preserve error as to any complaint about Barrera's advice as it relates to the text of the plea agreement, citing, as support, *Ex parte Hollowell*, No. 03-11-00240-CR, 2012 WL 1959309, at *4 (Tex. App.—Austin June 1, 2012, pet. ref'd) (mem. op., not designated for publication). We reject that argument, considering Torres has consistently argued Barrera affirmatively misadvised him of the immigration-related consequences of his plea, and, in any event, *Hollowell* is distinguishable.[9] Second, the State argues Torres's arguments lack merit, citing, as support, *Ex parte Ordonez*, No. 07-18-00445-CR, 2019 WL 5382630, at *3–4 (Tex. App.—Amarillo Oct. 21, 2019, pet. ref'd) (mem. op., not designated for publication), which is also distinguishable.[10]

We conclude the trial court did not abuse its discretion in denying Torres's habeas petition based on our prior decision in *Ex Parte Maldonado*, No. 05-19-01340-CR, 2020 WL 7585341, at *3 (Tex. App.—Dallas Dec. 22, 2020, pet. ref'd)

---

*believed* the recollections of Garcia, his translator, and another witness over Garcia's trial counsel. *Id*. at 621–22 (emphasis added). In contrast, in this case, the habeas court denied relief after finding Torres not to be credible.

[9] In both the habeas court and on appeal, Hollowell argued his prior counsel had deprived him of effective assistance by failing to ensure a pretrial motion was heard and ruled on, but on appeal, Hollowell added new arguments, arguing counsel also failed to conduct an investigation, failed to conduct adequate discovery, failed to make certain objections, and failed to give correct information. *Hollowell*, 2012 WL 1959309, at *3–4.

[10] In *Ordonez*, the habeas applicant's counsel testified by affidavit in the habeas proceeding and stated he fully discussed the case with Ordonez, did not give him any advice on immigration issues other than the provision in the plea agreement that stated, "I understand that if I am not a citizen . . . that my plea may result in deportation, the exclusion of admission to this country, or denial of naturalization under federal law," and did not tell Ordonez such consequences could be ignored. *Ordonez*, 2019 WL 5382630, at *4.

(mem. op., not designated for publication), in which we reached a similar conclusion based on a similar record.   We noted, in pertinent part:

> [F]or cases involving pre-*Padilla* pleas, a habeas applicant may not raise a *Padilla* claim asserting trial counsel rendered constitutionally ineffective assistance by failing to advise the applicant about the deportation consequences of a guilty plea; however, if the record shows counsel advised the applicant about deportation consequences, while under no obligation to do so, the advice rendered must be accurate or it may constitute ineffective assistance.

> We also noted, "[w]e must presume trial counsel rendered effective assistance

unless deficient performance is reflected in the record."  *Id.*  After acknowledging Maldonado argued we should accept his representation he was affirmatively misadvised that there would be no immigration-related consequences to his plea because his counsel did not remember how he advised him, we stated, "We are bound, however, by the trial court's fact finding that appellant's affidavit is self-serving and not credible." *Id*. at *8.

Here, we are bound by the same kind of fact finding by the trial court regarding Torres's testimony.  Based on the record before us, we conclude Torres has not met his burden to show a violation of the first *Strickland* prong and thus conclude the trial court thus did not abuse its discretion in denying Torres's application.  We overrule Torres's sole issue.

## CONCLUSION

We affirm the trial court's order denying relief on Torres's application for writ of habeas corpus.

/Ken Molberg/
KEN MOLBERG
JUSTICE

200027f.u05
Do Not Publish
TEX. R. APP. P. 47.2



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE: ANGEL GUADALUPE TORRES

No. 05-20-00027-CR

On Appeal from the Criminal District Court No. 3, Dallas County, Texas Trial Court Cause No. WX19-90191-J. Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the trial court's order denying relief on Torres's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 16th day of June, 2022.